**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| FANNIE MAE<br>Midtown Center<br>1100 15th Street NW<br>Washington, DC 20005 | : <br> : <br> : <br> : <br> : |
|        Plaintiff, | : <br> : |
|    -vs- | : <br> : |
| HATZ ONE LLC<br>c/o Shoshi Chen, Statutory Agent<br>4334 Baintree Road<br>University Heights, Ohio 44118, | : <br> : <br> : <br> : <br> : |
|     -and- | : <br> : |
| HATZ TWO LLC<br>c/o Yoel Weisz, Statutory Agent<br>2621 North Moreland Blvd., Suite 101<br>Cleveland, Ohio 44120, | : <br> : <br> : <br> : <br> : |
|     -and- | : <br> : |
| CLEVELAND 2 LLC<br>c/o Mendel Steiner, Statutory Agent<br>2815 Ludlow Road<br>Cleveland, Ohio 44120, | : <br> : <br> : <br> : <br> : |
|     -and- | : <br> : |
| CLEVELAND 3 LLC<br>c/o Mendel Steiner, Statutory Agent<br>2815 Ludlow Road<br>Cleveland, Ohio 44120, | : <br> : <br> : <br> : <br> : |
|     -and- | : <br> : |
| MENDEL STEINER<br>2815 Ludlow Road<br>Cleveland, Ohio 44120, | : <br> : <br> : <br> : |

-and-

NEW YORK COMMUNITY BANKCORP, INC., :
s/b/m NEW YORK COMMUNITY BANK :
102 Duffy Avenue, 3rd Floor :
Hicksville, New York 11801, :
:
-and- :
:
STATE OF OHIO DEPARTMENT OF TAX :
4485 Northland Ridge Blvd. :
Columbus, Ohio 43229, :
:
-and- :
:
BG PERSONNEL, LP :
5850 Granite Pkwy, Suite 730 :
Plano, Texas 74024, :
:
 Defendants, :

## COMPLAINT FOR JUDGMENT ON NOTE, BREACH OF GUARANTY, FORECLOSURE OF MORTGAGE, ENFORCEMENT OF SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS, AND APPOINTMENT OF RECEIVER

Plaintiff Fannie Mae, by and through its undersigned counsel, and for its Complaint against

Defendants, hereby alleges as follows:

## THE PARTIES

1. Fannie Mae brings this Complaint against Hatz One LLC, Hatz Two LLC, Cleveland 2 LLC, and Cleveland 3 LLC (collectively, "Borrower"), and other named defendants, based on various defaults under the terms of the relevant Loan Documents (as defined *infra*).

2. Fannie Mae is a corporation charted under the laws of the United States of America with its principal place of business located at Midtown Center, 1100 15th Street NW, Washington, DC 20005.

3. Fannie Mae is a citizen of the District of Columbia pursuant to 12 U.S.C. § 1717(a)(2)(B).

2

4.      Defendant Mendel Steiner ("Guarantor") is an individual whose domicile is located in New York, making him a citizen of New York pursuant to 28 U.S.C. § 1322, and who is subject to the jurisdiction of this Court because, among other reasons, he contractually consented to the jurisdiction of this Court.

5.      Each Borrower has a principal place of business at 1044 57th Street, Brooklyn, New York 11219.

6.      Based on information provided at origination of the loan at issue in this case, Guarantor is the sole member of each Borrower.

7.      Hatz One LLC is an Ohio liability limited company, and is subject to the jurisdiction of this Court.

8.      Because Guarantor is its sole member, Hatz One LLC is a citizen of New York pursuant to 28 U.S.C. § 1322.

9.      Hatz Two LLC is an Ohio liability limited company, and is subject to the jurisdiction of this Court.

10.     Because Guarantor is its sole member, Hatz Two LLC is a citizen of New York pursuant to 28 U.S.C. § 1322.

11.     Cleveland 2 LLC is an Ohio liability limited company, and is subject to the jurisdiction of this Court.

12.     Because Guarantor is its sole member, Cleveland 2 LLC is a citizen of New York pursuant to 28 U.S.C. § 1322.

13.     Cleveland 3 LLC is an Ohio liability limited company, and is subject to the jurisdiction of this Court.

14.     Because Guarantor is its sole member, Cleveland 3 LLC a citizen of New York

19558751v3

pursuant to 28 U.S.C. § 1322.

15.     Based upon publicly available information, Defendants New York Community Bankcorp, Inc., the successor by merger to New York Community Bank, State of Ohio Department of Tax, and BG Personnel, LP (collectively, the "Lienholder Defendants") may claim an interest in the Properties by virtue of liens and encumbrances noted on the title commitment filed in connection with this Complaint.

16.     Based on publicly available information, Defendant New York Community Bankcorp, Inc., the successor by merger to New York Community Bank has a principal place of business at 102 Duffy Avenue, 3rd Floor, Hicksville, New York 11801, and is a citizen of New York pursuant to 28 U.S.C. § 1332(c)(1).

17.     Defendant State of Ohio Department of Tax is a citizen of Ohio pursuant to 28 U.S.C. § 1322.

18.     Defendant BG Personnel, LP is a Texas-based limited partnership with a principal place of business at 5850 Granite Pkwy, Ste. 730, Plano, Texas 74024.

19.     Based on publicly available information, the partners of Defendant BG Personnel, L.P. are citizens of Texas.

20.     Based on the citizenship of its partners, Defendant BG Personnel, L.P. is a citizen of Texas pursuant to 28 U.S.C. § 1332.

21.     Fannie Mae has not joined any residential tenants with a leasehold interest in the subject property because Fannie Mae does not currently intend to foreclose upon or otherwise impact the rights of said residential tenants.

**JURISDICTION & VENUE**

22.     Fannie Mae incorporates by reference each of the allegations in the preceding

4

paragraphs as if fully re-written and restated herein.

23. Diversity jurisdiction is proper because Fannie Mae is a citizen of the District of Columbia, because none of the defendants are citizens of the District of Columbia, and because the amount in controversy exceeds $75,000.00.

24. Borrower and Guarantor consented to service, jurisdiction, and venue in this court for any litigation involving the loan at issue in this matter.

25. Venue in this Court are proper because the subject of this action is a commercial loan, payment of which is secured by real property located within the territorial jurisdiction of this Court, in Cuyahoga County, Ohio.

26. A Title Commitment that establishes evidence of record title to the Properties as required under Amended General Order No. 2006-16-6 is filed contemporaneously herewith.

27. An affidavit that attaches a written payment history, which authenticates copies of the promissory note, a full recorded copy of the mortgage, and that further satisfies the requirements of Amended General Order No. 2006-16-6 is attached hereto as Exhibit A.

<u>**FACTS COMMON TO ALL COUNTS**</u>

28. Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

29. Fannie Mae is the current owner and holder of the "Loan Documents" as defined below. Fannie Mae is a government-sponsored enterprise and a federally chartered entity that Congress created to enhance the nation's housing-finance market.

30. Under its federal statutory charter, Fannie Mae has a public mission to provide liquidity, stability, and affordability to the U.S. housing market, including the market for quality, affordable rental housing. Fannie Mae is operating under the conservatorship of the Federal

19558751v3

Housing Finance Agency ("FHFA"), which is an independent agency of the United States created in 2008 to supervise certain Government Sponsored Enterprises including Fannie Mae. *See* 12 U.S.C. § 4511 *et seq.*

31.     Among other powers, Congress granted the Director of FHFA the authority to place Fannie Mae into conservatorship under certain, statutorily defined conditions, which the Director did in 2008. As Conservator, FHFA has broad statutory powers, including the powers to preserve and conserve Fannie Mae's assets and property, and to collect obligations due Fannie Mae. FHFA's ability to exercise its statutory powers and functions as Conservator is protected by federal law. *See, e.g.,* 12 U.S.C. § 4617(f).

32.     On or about October 30, 2020, Borrower and entered into a certain multifamily loan (the "Mortgage Loan"), subject to the terms and conditions of that certain Multifamily Loan and Security Agreement (Non-Recourse) dated October 30, 2020 (the "Loan Agreement") with Greystone Servicing Company LLC ("Original Lender"). A true and accurate copy of the Loan Agreement is attached hereto as Exhibit B.

33.     The Mortgage Loan is evidenced by a Multifamily Note in the original principal amount of $22,645,000.00 (the "Note") dated October 30, 2020, which was executed Borrower and originally payable and delivered to Original Lender. A true and accurate copy of the Note is attached hereto as Exhibit C.

34.     The Note contains an endorsement page, which demonstrates that the Note was endorsed by Original Lender and made payable to Fannie Mae, who is currently in physical possession of the original Note.

35.     To secure repayment of the Note and the amounts due under the Loan Agreement, Borrower executed and delivered to Original Lender an Open-End Multifamily Mortgage,

6

Assignment of Leases and Rents, and Security Agreement, and Fixture Filing (OHIO) (the "Mortgage") dated October 30, 2020 and recorded in the Recorder's Office for Cuyahoga County, Ohio (the "Recording Office") on November 6, 2020 as Instrument No. 202011060167. A true and accurate copy of the recorded Mortgage is attached hereto as Exhibit D.

36.     The Mortgage granted a first lien on certain real property and personal property located at 2635 N. Moreland Boulevard, 2621 N. Moreland Boulevard, 2622 N. Moreland Boulevard, 2630 N. Moreland Boulevard, 2636 N. Moreland Boulevard, 2642 N. Moreland Boulevard, 2653 N. Moreland Boulevard, 2805 Ludlow Road, 2822 N. Moreland Boulevard, 2825 N. Moreland Boulevard, 2843 N. Moreland Boulevard, 2851 Hampton Road, 2870 S. Moreland Boulevard, 2880 S. Moreland Boulevard (each in Cleveland, Ohio 44120), and 14101 S. Woodland Road, Shaker Heights, Ohio 44120 (the "Properties").

37.     The Properties comprise a multi-family housing project, which includes 15 separate parcels that contain 308 studio, one, two, and three bedroom units totaling 333,580 net rentable square feet. The Properties occupy a combined 8.27 acres, located in the Shaker Heights neighborhood in the suburbs of Cleveland, Ohio. The Properties are operated as a single economic unit, and offer off-street surface and garage parking, secure entry, and on-site laundry.

38.     The Mortgage contains a security agreement (the "Security Agreement") pursuant to which Borrower pledged, assigned, and granted a continuing security interest (the "Security Interest") in any and all of that portion of the Properties in which a security interest may be granted and in which Borrower has any present or thereafter acquired right title or interest.

39.     The Mortgage also contains an assignment of Leases and Rents (the "Assignment of Leases") pursuant to which Borrower absolutely and unconditionally assigned and transferred all Leases and Rents (as both terms are defined in the Mortgage). However, Borrower was granted

7

a revocable license to exercise all rights, power and authority granted to Borrower under the Leases and to collect and receive all Rents. Upon an Event of Default, this revocable license is terminated and Fannie Mae is immediately entitled, directly or through a receiver, to receive and collect all Rents due and paid.

40.     Article 3 of the Loan Agreement identifies specific circumstances in which Borrower would be personally liable for some or all of the amount due under the Mortgage Loan. Except under those specific circumstances (the "Exceptions to Non-Recourse Provision"), Borrower is not personally liable for repayment of the Mortgage Loan. Rather, Fannie Mae's only recourse for the satisfaction of the amount due under the Mortgage Loan is Fannie Mae's exercise of its rights and remedies with respect to the Properties and other collateral.

41.     On October 30, 2020, Guarantor executed and delivered to Original Lender a Guaranty of Non-Recourse Obligations (the "Guaranty"). A true and accurate copy of the Guaranty is attached hereto as Exhibit E.

42.     Pursuant to the Guaranty, Guarantor absolutely and unconditionally guaranteed Borrower's full and prompt payment of any and all amounts, obligations, and liabilities owed by Borrower upon the occurrence of any of the Exceptions to Non-Recourse Provision, and all costs and expenses, including reasonable attorneys' fees, associated with the enforcement of the Guaranty.

43.     The Loan Agreement, Note, Mortgage, Guaranty, and other related loan documents (collectively, the "Loan Documents") were assigned by Original Lender to Fannie Mae pursuant to the certain Assignment of Collateral Agreements and other Loan Documents dated October 30, 2020 ("Assignment"). A true and accurate copy of the Assignment is attached hereto as Exhibit F.

19558751v3

44.     Fannie Mae is also current mortgagee of record for the Mortgage, as evidenced by an Assignment of Open-End Mortgage dated October 30, 2020, and filed for record on November 8, 2020 as Instrument Number 202011060168 with the Cuyahoga County Recorder's Office (the "Assignment of Mortgage").  A copy of the Assignment of Mortgage is attached hereto as Exhibit G.

45.     Because Fannie Mae is the current holder of the Note, mortgagee of record of the Mortgage, and assignee of the Assignment, Fannie Mae is entitled to enforce all of the Loan Documents.

46.     Fannie Mae and Original Lender (as Fannie Mae's predecessor-in-interest) have performed all of their respective obligations under the Loan Documents.

## BORROWER COMMITS MULTIPLE EVENTS OF DEFAULT

47.     Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

Payment Default:

48.     Pursuant to the Note and Loan Agreement, Borrower was obligated to make consecutive monthly debt service installment payments in the amount of the applicable "Monthly Debt Service Payment" (as defined in the Loan Agreement).

49.     Borrower has failed to timely pay the Monthly Debt Service Payment on June 1, 2024, July 1, 2024, and August 1, 2024.

50.     Borrower's failure to timely pay the Monthly Debt Service Payments constitutes an automatic "Event of Default" as defined in Section 14.01(a)(1) of the Loan Agreement (the "Payment Default").

Financial Disclosure Default:

9

51.     In addition, during an inspection of the Properties that occurred on June 11, 2024, Borrower and its property management team refused to provide complete and accurate information regarding the Properties.

52.     Specifically, Borrower (i) instructed the property management team to not answer questions about the Properties, and (ii) provided a partial and incomplete rent roll which intentionally, recklessly, or with gross negligence omitted material information from the report.

53.     In addition, the Borrower has failed to provide any of the financial records which were required to be furnished under Section 8.02 of the Loan Agreement for years 2023 and 2024.

54.     The failure to provide complete and accurate information upon request is a violation of Borrower's covenants under Section 8.02 of the Loan Agreement.

55.     Moreover, the material omission of information provided by Borrower in connection with any financial statement, rent roll, or other information provided to Lender during the term of the Mortgage Loan is an additional automatic Event of Default under Section 14.01(a)(5)(B) of the Loan Agreement.

56.     Upon the occurrence of any single "Event of Default" under the Loan Agreement, Fannie Mae may declare the entire unpaid principal balance of the Mortgage Loan, any Accrued Interest, interest accruing at the Default Rate, the Prepayment Premium (if applicable), and all other Indebtedness, at the option of Fannie Mae, shall immediately become due and payable.

57.     The Loan Agreement further provides that Borrower will pay Fannie Mae for the full amount of the "Indebtedness," which includes "Enforcement Costs" that includes, without limitation, all expenses and costs, including reasonable attorneys' fees and expenses (as those terms are defined in the Mortgage.

58.     On July 23, 2024, Fannie Mae delivered to Borrower and Guarantor a Default and

10

Acceleration Letter (the "Notice of Default"), which provided Borrower and Guarantor notice of the Payment Default and demanded payment in full of all amounts due, owing and payable under the Loan Documents. A true and accurate copy of the Notice of Default is attached hereto as Exhibit H.

59. To date, Borrower has not cured any of the Events of Default, nor has it paid the accelerated balance due under the Note.

## FANNIE MAE DISCOVERS ADDITIONAL VIOLATIONS POST-ACCELERATION DURING AN AUGUST 6, 2024 SITE INSPECTION

60. Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

61. After service of the Notice of Default and the acceleration of the loan balance, representatives of Fannie Mae conducted a follow-up inspection of the Properties on August 6, 2024.

62. During and after the August 6, 2024 site visit, Fannie Mae discovered additional violations of Borrower's duties and obligations under the Loan Agreement.

Deferred Maintenance Resulting in Life/Health/Safety Concerns:

63. Borrower has allowed the condition of the Properties to deteriorate, resulting in unsafe living conditions for the existing tenants.

64. Borrower has failed to service *any* of the fire extinguishers at the Properties since 2022.

65. The last date of service for fire extinguishers at the Properties was 2021 or 2022.

66. A notice posted at Drexmore Mansion 1, 2, and 3 stated that the gas had been shut off since March 2024.

67. Trash has been allowed to accumulate at the Properties resulting in unsanitary

11

conditions.

68.     Broken and open windows have left the Properties unsecure and exposed to the elements, resulting in safety concerns and increased moisture levels that could lead to mold growth.

69.     The broken and open windows, if unresolved, could cause significant future damage to the Properties and threaten the health and safety of tenants as the weather changes.

70.     Three elevators were nonfunctional.

71.     No onsite property manager is available to assist tenants with issues, and tenants can contact property management by appointment only.

72.     Each of these deferred maintenance issues is a violation of Borrower's obligations under Sections 6.02(b), 6.02(c) and/or 6.02(e) of the Loan Agreement.

Waste or Abandonment of the Properties:

73.     More than 100 of the 308 total units (one third of the total units) at the Properties are offline and unrentable.

74.     Based on a partial rent roll of 158 units, 98 of those units were vacant.

75.     Buildings known as Drexmore Mansion 1, 2, and 3, Ludlow Castle 1, 2, and 3, the Granby, the Galloway, and the Weatherwood all appear to be fully vacant.

76.     The failure to return offline units to a rentable condition is waste or abandonment in violation of Borrower's obligations under Sections 6.02(c) of the Loan Agreement.

Miscellaneous Violations:

77.     Borrower refused to provide any form of rent roll despite repeated written requests in violation of Section 8.02 of the Loan Agreement.

78.     To date, Borrower has not cured any of these additional Events of Default,

12

identified in connection with the August 6, 2024 site inspection.

### FANNIE MAE DISCOVERS ADDITIONAL VIOLATIONS FROM TITLE COMMITMENT

79. Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

80. Based on the results of the title commitment performed in anticipation of filing this Complaint, Fannie Mae discovered that Borrower failed to pay taxes, including without limitation withholding taxes, in violation of Section 4.02(c) of the Loan Agreement.

81. In addition, Fannie Mae discovered that Borrower failed to provide Fannie Mae notice of pending litigation, which could adversely affect Borrower's financial condition or the condition or operation of the Properties in violation of Section 4.02(f) of the Loan Agreement.

82. In addition, Borrower has permitted the creation or existence of the following Liens (as defined in the Loan Agreement) on the Properties in violation of Section 11.02 of the Loan Agreement:

- Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, and Financing Statement from SIG Shaker Square LLC to New York Community Bank filed for record on June 1, 2015 as AFN 201506010145 and AFN 201506019003 of the Cuyahoga County Records.

- Judgment liens in favor of State of Ohio Department of Taxation against Hatz One, filed for record on June 9, 2021 as JL-21-040276 and against Hatz Two, filed for record on September 22, 2021 as JL-21-055224 of the Cuyahoga County Records.

- Mechanic's lien in favor of BG Personnel, LP against Cleveland 3, LLC filed for record on August 4, 2022 as AFN 2022080040301 of the Cuyahoga County Records.

83. On September 9, 2024, Fannie Mae delivered to Borrower and Guarantor a Notice

of Additional Post-Acceleration Default Letter (the "Notice of Additional Defaults"), which provided Borrower and Guarantor notice of the additional defaults identified at the August 6, 2024 site visit and in the title commitment. A true and accurate copy of the Notice of Additional Defaults is attached hereto as Exhibit I.

84. To date, Borrower has not cured any of these additional Events of Default, identified in the title commitment.

## COUNT ONE: *IN REM* DEFAULT UNDER THE NOTE

85. Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

86. Borrower has breached the Note, Loan Agreement, and other Loan Documents and has failed to cure multiple Events of Default thereunder.

87. Fannie Mae and its predecessor-in-interest have satisfied all of their obligations under the Loan Documents, and all conditions precedent to Fannie Mae's claims have been performed, have occurred, or have been excused.

88. Pursuant to Section 4 of the Note, Fannie Mae has accelerated the entire balance due under the Note, the full amount of which is currently due and owing.

89. Based on the acceleration of the Note, the amount due and owing to Fannie Mae under Note is set forth below:

| | |
|---|---|
| Outstanding Principal Balance | $22,645,000.000 |
| Interest (5/1/24 - 8/31/24) | $247,585.35 |
| Default interest (6/1/24 - 8/30/24) | $228,966.12 |
| Yield Maintenance: | $226,450.00 |
| April 2024 Mortgage Payment Default Interest | $1,022.97 |
| Late Charges | $70,551.76 |
| Return check fees | $950.00 |
| Tax & Insurance Advance | $164,246.91 |

19558751v3

| UCC Termination Fee: | $100.00 |
|---|---|
| Release Fee: | $600.00 |
| **Total Amount Due as of 8/30/24** | **$23,585,473.11** |

90.     Any and all payments received after acceleration have been or will be applied in accordance with the payment application process set forth in the Loan Documents.

91.     Fannie Mae is entitled to an *in rem* judgment on all amounts due under the Note and is further entitled to additional amounts under the Loan Documents including, but not limited to additional property protection advances, other advances, fees and charges, and all collection costs including without limitation attorneys' fees.

## COUNT TWO:  LIMITED RECOURSE PERSONAL LIABILITY OF BORROWER AND GUARANTOR UNDER THE LOAN AGREEMENT AND THE GUARANTY

92.     Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

93.     Under Section 3.02(a) of the Loan Agreement, Borrower is personally liable to Fannie Mae for the following:

•     The amount of any loss or damages suffered as a result of the failure to comply with any provision of the Loan Agreement or other Loan Document relating to the delivery of books and records, statements, schedules, and reports.  *See* Loan Agreement, Section 3.02(a)(4).

•     The amount of any loss or damages suffered as a result of waste or abandonment of the Properties.  *See* Loan Agreement, Section 3.02(a)(6).

•     The amount of any loss or damages suffered as a result of grossly negligent or reckless unintentional material misrepresentation or omission by Borrower or certain others in connection with ongoing financial or other reporting required by the Loan Documents. *See* Loan Agreement, Section 3.02(a)(7).

15

94.     Borrower has failed to comply with certain provisions of the Loan Agreement relating to the delivery of books and records, statements, schedules, and reports.

95.     Upon information and belief, Borrower has allowed the Properties to deteriorate and fall into a state of disrepair, which constitutes waste or abandonment under Ohio law.

96.     Borrower has acted grossly negligent or recklessly in committing unintentional material misrepresentations or omissions in connection with ongoing financial or other reporting required by the Loan Documents.

97.     Fannie Mae has suffered damages as a result of these actions or omissions by Borrower, in an amount to be determined at trial.

98.     All conditions precedent to Fannie Mae's claim have been performed, have occurred, or have been excused.

99.     Pursuant to Section 3.02(a) of the Loan Agreement, Borrower is personally liable for the full amount of loss or damages suffered by Fannie Mae as a result of the actions or omissions by Borrower at issue in this claim.

100.    Pursuant to the Guaranty, Guarantor is personally liable for the full amount of loss or damages suffered by Fannie Mae as a result of the actions or omissions by Borrower at issue in this claim.

## COUNT THREE:  FULL RECOURSE PERSONAL LIABILITY OF BORROWER AND GUARANTOR UNDER THE LOAN AGREEMENT AND THE GUARANTY

101.    Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

102.    Under Section 3.02(b) of the Loan Agreement, Borrower is personally liable to Fannie Mae for the full amount due under the Mortgage Loan upon the occurrence of any fraud, written intentional material misrepresentation, or intentional material omission by Borrower or

16

certain others in connection with ongoing financial or other reporting required by the Loan Documents.  *See* Loan Agreement, Section 3.02(b)(5).

103.    Borrower has committed fraud through intentional written misrepresentations and/or intentional material omissions in connection with ongoing financial or other reporting required by the Loan Documents.

104.    In addition, under Section 3.02(b) of the Loan Agreement, Borrower is personally liable to Fannie Mae for the full amount due under the Mortgage Loan upon the occurrence of any Transfer (as defined in the Loan Agreement) that is not permitted under the Loan Agreement or other Loan Documents.  *See* Loan Agreement, Section 3.02(b)(2).

105.    Borrower has permitted the creation or existence of various Liens (as defined in the Loan Agreement) on the Properties in violation of Section 11.02 of the Loan Agreement, which constitutes a Transfer (as defined in the Loan Agreement) that is not permitted under the Loan Documents.

106.    All conditions precedent to Fannie Mae's claim have been performed, have occurred, or have been excused.

107.    Pursuant to Section 3.02(b) of the Loan Agreement, Borrower is personally liable for the full amount due under the Mortgage Loan.

108.    Pursuant to the Guaranty, Guarantor is personally liable for the full amount due under the Mortgage Loan.

### COUNT FOUR :  FORECLOSURE OF MORTGAGE AND SECURITY AGREEMENT

109.    Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

110.    Fannie Mae is the current mortgagee of record.

111.     By virtue of the lien of the Mortgage, Fannie Mae holds a valid first priority mortgage lien on the Properties, superior to any and all other liens, claims or encumbrances other than those for any tax lien asserted by the Cuyahoga County Treasurer under state law.

112.     Pursuant to the terms of the Mortgage, upon the occurrence of any Event of Default (as defined in the Loan Agreement), the mortgagee is entitled to declare the entire indebtedness immediately due and payable and to institute a judicial foreclosure of the lien of the Mortgage.

113.     Pursuant to the terms of the Security Agreement, upon an Event of Default, Borrower further agreed that the mortgagee shall have all the rights and remedies of a secured party under the Uniform Commercial Code as adopted by the State of Ohio with respect to any collateral to which the Security Interest attached.

114.     Multiple Events of Default have occurred under the terms of the Loan Agreement, the terms of the Mortgage and Security Agreement have been breached, and Fannie Mae is entitled to have its lien on and the Security Interest in the Properties foreclosed.

115.     All conditions precedent to Fannie Mae's claim have been performed, have occurred, or have been excused.

116.     Fannie Mae is authorized under the Loan Documents to make certain protective advances to preserve the value of its collateral.  Any amounts disbursed by Fannie Mae for the preservation of its collateral become additional indebtedness secured by the Mortgage.

117.     The Properties cannot be divided without materially impairing their value or the interests of Fannie Mae therein, and the Properties should therefore be sold according to law, as a whole, with the proceeds of sale after payment of the costs of sale and real estate taxes being applied to satisfy Fannie Mae's claims.

118.     The Properties should be sold pursuant to Ohio law and procedures, free and clear

of any liens, claims, or encumbrances, other than the obligation to pay real estate taxes and assessments going forward.

119.     Defendants New York Community Bankcorp, Inc., the successor by merger to New York Community Bank, State of Ohio Department of Tax, and BG Personnel, LP (the "Lienholder Defendants") may claim an interest in the Properties by virtue of liens and encumbrances noted on the title commitment filed in connection with this Complaint.

120.     Upon information and belief, any lien of Defendant New York Community Bankcorp, Inc., the successor by merger to New York Community Bank in the Properties has been paid and/or otherwise satisfied, and should be released.

121.     The potential interests of the Lienholder Defendants are more specifically set forth in the title commitment filed contemporaneously herewith.

122.     Any interest of the Lienholder Defendants is junior and subordinate to the lien of Mortgage and Security Agreement.

123.     Plaintiff further acknowledges that the Cuyahoga County Treasurer has an interest in the Properties for taxes and assessments.

**COUNT FIVE:  ENFORCEMENT OF ASSIGNMENT OF LEASES**

124.     Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

125.     Pursuant to terms of the Assignment of Leases, upon the occurrence of an Event of Default under the Loan Agreement, Fannie Mae, as mortgagee of record, is entitled to collect and receive all Rents.

126.     Multiple Events of Default have occurred under the terms of the Mortgage and the Loan Agreement and Fannie Mae is entitled to exercise all of its rights under the Assignment of

19558751v3

Leases, including the right to collect Rents, directly or through a receiver.

127.     All conditions precedent to Fannie Mae's claim have been performed, have occurred, or have been excused.

## **COUNT SIX:  APPOINTMENT OF RECEIVER**

128.     Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

129.     The Mortgage provides that, upon an Event of Default, Fannie Mae can obtain a court-appointed receiver (including an *ex parte* appointment) to perform all acts necessary and appropriate for the operation and maintenance of the Properties, including, without limitation, the execution, cancellation, or modification of leases; the collection of all rents and revenues of the Properties; the making of repairs to the Properties; and the execution or termination of contracts providing for the management or maintenance of the Properties, all on such terms as are deemed best to protect the security of the Properties and Fannie Mae. *See* Mortgage at ¶ 3(e).

130.     Based upon the Events of Default set forth herein and pursuant to the Mortgage, Borrower has expressly consented to the appointment of a receiver and to the payment of reasonable fees to that receiver for managing the Properties.

131.     The life, health, and safety concerns set forth herein create an emergency situation, most importantly, for the residents of the Properties, but, also, for Fannie Mae's economic interests.

132.     All conditions precedent to Fannie Mae's claim have been performed, have occurred, or have been excused.

133.     Fannie Mae is entitled to the appointment of a receiver pursuant to Rule 66 of the Federal Rules of Civil Procedure and applicable federal practice and procedure.

19558751v3

**WHEREFORE**, Fannie Mae prays for judgment against Borrower and each of the Guarantors as follows:

A.     On Count One, an *in rem* judgment in favor of Fannie Mae and against Hatz One LLC, Hatz Two LLC, Cleveland 2 LLC, and Cleveland 3 LLC on Count One declaring that the Note is in default, that the Note has been accelerated, and that the amount of $23,585,473.11 is due and owing as of August 30, 2024, plus additional default interest on the outstanding principal balance of $22,645,000.00, plus all additional amounts recoverable under the Loan Documents including additional property protection advances, additional fees, and collection costs (including reasonable attorney's fees), less any and all amounts received, if any, after acceleration.

B.     On Count Two, a judgment in favor of Fannie Mae and against Hatz One LLC, Hatz Two LLC, Cleveland 2 LLC, and Cleveland 3 LLC, and Mendel Steiner, jointly and severally, declaring that Borrower and Guarantor are personally liable to Fannie Mae for the full amount of loss or damages suffered by Fannie Mae as a result of the actions or omissions by Borrower at issue in this claim, in an amount in excess of $25,000 which will be determined at trial.

C.     On Count Three, a judgment in favor of Fannie Mae and against Borrower and Guarantor, jointly and severally, declaring that Borrower and Guarantor are each personally liable to Fannie Mae for the entire indebtedness, in the amount of $23,585,473.11 as of August 30, 2024, plus additional default interest on the outstanding principal balance of $22,645,000.00, plus all additional amounts recoverable under the Loan Documents including additional property protection advances, additional fees, and collection costs (including reasonable attorney's fees), less any and all amounts received, if any, after acceleration.

D.     An order on Count Four declaring that the Mortgage is a valid and subsisting first and best lien upon the Properties, subject only to real estate taxes, and that said mortgage lien be

foreclosed, and that the Security Agreement is a valid and subsisting first and best lien upon the Personal Property, and that the lien contained therein be foreclosed;

E. An order on Count Five declaring that Fannie Mae is entitled to exercise its rights under the Assignment of Leases;

F. An order on Count Six appointing a receiver over the Properties, to collect Rents, to preserve the Properties, and for all other purposes allowed by law;

G. That the equity of redemption of Borrower as borrower be forever cut off, barred and foreclosed, and that the Properties, including without limitation all collateral under the Security Agreement, be assembled and sold upon execution in accordance with law;

H. That upon the sale of the Properties, including without limitation all collateral under the Security Agreement, the proceeds of such sale be paid to Fannie Mae to satisfy the amount of its existing lien and the interest, charges, fees, disbursements, and advancements and other matters related to said real estate and personal property, together with all cost and fees herein expended, including attorney fees;

I. That all liens be marshaled, to the extent necessary; and

J. For such other relief to which Fannie Mae may be entitled in equity or at law.

Respectfully submitted,

/s/ Matthew D. Gurbach
Matthew D. Gurbach (0076707)
Brendan Heil (0091991)
BRICKER GRAYDON LLP
1100 Superior Avenue, Suite 1600
Cleveland, OH  44114
Tel: (216) 523-5405
mgurbach@brickergraydon.com
bheil@brickergraydon.com

19558751v3

Justin W. Ristau (0075222)
BRICKER GRAYDON LLP
100 South Third Street
Columbus, Ohio 43215
Tel: (614) 227-2300
Email: jristau@brickergraydon.com

19558751v3