# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| FANNIE MAE | Case No. 1:24-cv-1606 |
| Plaintiff, | |
| v. | Judge Bridget Meehan Brennan |
| HATZ ONE LLC, et. al., | |
| Defendants. | |

**RESPONSE OF DEFENDANTS HATZ ONE LLC, HATZ TWO LLC, CLEVELAND 2 LLC, CLEVELAND 3 LLC, AND MENDEL STEINER TO PLAINTIFF FANNIE MAE'S EMERGENCY *EX PARTE* MOTION FOR IMMEDIATE APPOINTMENT OF A RECEIVER**

Defendants Hatz One LLC, Hatz Two LLC, Cleveland 2 LLC, Cleveland 3 LLC (collectively "Borrowers"), and Mendel Steiner ("Guarantor") ( all collectively "Hatz") submit the following Response in Opposition ("Response") to Plaintiff Fannie Mae's *Emergency Ex Parte Motion for Immediate Appointment of Receiver*, filed under Rule 66 of the Federal Rules of Civil Procedure ("Motion"). In support of its Response, Hatz also submits the Declarations of Mendel Steiner ("Steiner Decl.") and Leo Gold ("Gold Decl."), filed herewith as Exhibits A and B, respectively.

## I.     INTRODUCTION

Fannie Mae's Motion asked this Court for the drastic and extraordinary remedy of the immediate, *ex parte* appointment of a receiver. (After Defendants' counsel filed a Notice of Appearance, this Court effectively denied the *ex parte* aspect of Plaintiff's Motion and established a briefing schedule which has since been extended by seven days by the agreement of the parties. (9/23/24 Order)). Plaintiff's request is both premature and unwarranted in the instant situation. Fannie Mae is not threatened by any immediate loss and the security for its loan is not in jeopardy.

In sum, Plaintiff cannot demonstrate a need to take day to day control over the properties from Hatz and vest it in the hands of a Receiver – thus, burdening all parties with the layers of expense implicated by a Receiver and its counsel.

As of today, all customary monthly payments owed by Hatz to Fannie Mae have been paid. Indeed, at the time this matter was initiated Hatz had inadvertently missed merely **ONE** of its payments. Hatz has since tendered payment in full for April 2024 – a payment which has been formally acknowledged by Plaintiff. (Steiner Decl. ¶ 3, Exhibit 1 thereto, 10/3/24 Ristau letter). It is true that, due to a confluence of events, there are a significant number of unoccupied units in the rental properties which form the collateral underlying Plaintiff's loan to Hatz[1]. It is, however, equally true that the Guarantor, Mendel Steiner, has done precisely what a guarantor is expected to do – stand behind the Loan with his resources. Thus, the currently unoccupied units do not constitute an immediate threat to Plaintiff's security and do not form a proper basis to impose a Receiver on Hatz and wrest control of the Properties from them.

While Hatz concedes that there were some deficiencies in property condition noted at the June 11 and August 6, 2024 site visits by Plaintiff and deficits in the information provided to Plaintiff, those issues have been or are being addressed. As evidenced below, and in the attached declarations, Hatz has already corrected or is in the process of correcting *all* of the issues Fannie

---

[1] It is also true that Plaintiff accurately identifies certain liens on its collateral. Some of those liens, on their face, do not appear to make logical sense - most significantly the surviving 2015 lien of New York Community Bank ("2015 NYCB Lien"). Plaintiff's Loan to Borrowers closed in 2020. It seems highly unlikely that a 2020 Loan would have issued from Plaintiff in the absence of evidence that the preexisting 2015 NYCB Lien had been discharged at or before closing. Hatz's counsel is working diligently to identify the underlying nature and/or current validity of all liens identified by Plaintiff. For example, immediately upon the filing of the State of Ohio's Answer in this matter, Hatz's counsel called and left a message for Mr. Steinmetz, the State's counsel of record, to initiate a dialogue which it is anticipated will result in resolution of the State's involvement in this case. Hatz's counsel also emailed and left a message for Craig Bernstein, the attorney of record for BP Personnel, LP, listed as the holder of a mechanic's lien in the Title Commitment filed at Dkt No. 2. Given Columbus Day, it seems unlikely that Hatz will be able to get to the bottom of the State's interest or the exact status of the mechanic's lien before this Opposition is filed.

Mae identifies in its "emergency" Motion.[2] Moreover, from June 2024 to the present, Hatz has consistently demonstrated its commitment to fulfill its contractual obligations and a willingness to work with Fannie Mae to assuage its concerns about the condition and maintenance of its collateral. Finally, Hatz has agreed to work with Fannie Mae to hire a mutually satisfactory property manager. Put simply, there is no emergency. Mr. Steiner has stepped in as Guarantor and, consequently, Plaintiff is not threatened by loss, much less imminent loss. The appointment of a receiver in this circumstance would only serve to waste the resources of the parties and, in the end, would do more harm than good. This Court should deny Fannie Mae's Motion. Alternatively, the Court should defer decision while the parties work extra judicially to resolve any disputes in the most efficient manner possible.

## II.     FACTUAL BACKGROUND

The subject of this action relates to various real properties owned by Defendants Hatz One LLC, Hatz Two LLC, Cleveland 2 LLC, and Cleveland 3 LLC located in Shaker Heights, Ohio and Cleveland, Ohio (the "Properties").[3] (Compl. ¶¶ 36-37). Together the Properties contain 308 separate units. In October 2020, Hatz entered into a multifamily loan (the "Loan") with Greystone Servicing Company, LLC for the Properties. (Compl. ¶ 32). Defendant, Mr. Mendel Steiner

---

[2] Hatz's principals and key employees are Orthodox Jews. Consequently, the timing of Plaintiff's Motion, shortly before the commencement of Rosh Hashanah, could not have been more unfortunate for them. Required religious observances have hampered both Hatz's ability to address Plaintiff's stated concerns and Hatz's communications with its counsel. While Plaintiff granted a seven-day extension to Hatz, time was once again limited, as a consequence of Yom Kippur which commenced at sundown on Friday, October 11, 2024. Indeed, the very day this Opposition is due is Columbus Day, a secular federal and state holiday. As a result, Hatz requests an opportunity to supplement its Opposition prior to any ruling by this Court. Further, as set forth in Hatz's Motion for Evidentiary Hearing which is being filed contemporaneously herewith, Hatz would like to present testimony and additional documentary evidence to the Court prior to its ruling on Plaintiff's Motion.

[3] The addresses of these various properties are: 2621 N. Moreland Boulevard, 2622 N. Moreland Boulevard, 2630 N. Moreland Boulevard, 2635 N. Moreland Boulevard, 2636 N. Moreland Boulevard, 2642 N. Moreland Boulevard, 2653 N. Moreland Boulevard, 13300 Drexmore Road, 2805 Ludlow Rd., 2815 Ludlow Rd., 2822 S. Moreland Blvd., 2820 Ludlow Rd., 2825 S. Moreland Boulevard, 2835 S. Moreland Boulevard, 2843 N. Moreland Blvd., 2851 S. Hampton Rd., 2859 S. Hampton Rd., 2870 S. Moreland Blvd., 2880 S. Moreland Blvd. (each in Cleveland, Ohio 44120), and 14101 S. Woodland Road, Shaker Heights, Ohio 44120. (Ex. 1 to Gold Decl.)

3

guarantees Plaintiff's Loan. (Compl. ¶ 4). That Loan is now held by Fannie Mae. (Compl. ¶ 34). Under the Loan, Hatz is required to make Monthly Debt Service Payments to Fannie Mae. (Compl. ¶ 48). From the inception of the loan, Hatz has timely made its payment to Fannie Mae for each month until April 2024 when a clerical error caused Hatz to miss one payment. (Steiner Decl. ¶3) Hatz has since corrected the error and is up to date on its regular monthly payments. (*Id*.) Contrary to the representations in Plaintiff's Motion, Hatz made the May, June, July, August, and September payments never realizing that it had missed April. (*Id*.).

On June 11, 2024, an inspection of the Properties was conducted. At the time, Fannie Mae requested rent rolls and information regarding Hatz's property manager among other things. As of the date of this Response, Hatz has tendered to Plaintiff its current rent rolls and a copy of its current Property Management Agreement with Guardian Investment Co., LLC. (Steiner Decl. ¶ 7). Hatz is diligently working to provide operating statements from 2023 and 2024 to Fannie Mae but the disclosure of such statements is complicated by the fact that the statements contain confidential financial information of other entities who are not Borrowers or otherwise parties in this lawsuit.

On July 23, 2024, Hatz received a Notice of Default and Acceleration from Fannie Mae ("Notice"). In the Notice, Fannie Mae alleged that Hatz had failed to make its required payments on June 1, 2024 and July 1, 2024, failed to provide complete information on the Properties, and failed to make certain repairs to the Properties. (Compl. ¶¶ 49, 51, 64-70).On August 6, 2024, Fannie Mae conducted a follow-up inspection and identified several maintenance issues with the Properties such as broken windows, non-functioning elevators, accumulation of trash, a notice of **potential** gas shut-off, and fire extinguishers which required servicing. Compl. ¶¶ 64-70). As an initial note, there was never a gas shutoff at the Properties. While the gas company did issue a shut

4

off notice, the gas remained on at all times as evidenced by the utility bills showing continuous usage from October 2023 through September 2024. (*See* Gold Decl., ¶ 5 and copies bills attached thereto as Cumulative Exhibit 3). Furthermore, all gas bills are now paid to date. *Id*. All other issues raised by Plaintiff - trash, fire extinguishers, and elevators - have either been resolved or are scheduled for imminent repair. (Gold Decl. ¶¶ 4, 6, 8).

Specifically, since Plaintiff's inspections and receipt of the Notice and even prior to the filing of this action, Hatz has taken steps to remedy every issue identified by Fannie Mae. First, Hatz did in fact make full payments on June 1, 2024, and July 1, 2024 and it communicated this to Fannie Mae. Once Hatz learned, however, that they inadvertently failed to make a full payment in April 2024, they promptly remedied that omission. (Steiner Decl. ¶ 3). Second, Hatz has addressed all of the health and safety issues Fannie Mae identified. All fire extinguishers have been serviced, trash has been removed, gas service has been paid in full and continues uninterrupted, open or broken windows have been repaired, and service appointments for elevators have been scheduled. (Gold Decl. ¶¶ 4-6, and 8). Third, Hatz is determining the basis and validity of the liens on its title with the good faith intention of their resolution. (Steiner Decl., ¶ 5). Finally, as noted above, as of today, Hatz has supplied Fannie Mae with the rent roll as well as a copy of its current Property Management Agreement with Guardian Investment Co., LLC (Steiner Decl., ¶ 7), and documentation on the repairs that are completed and/or scheduled. (Gold Decl. ¶¶ 4-6, and 8).

These recent actions are entirely consistent with Hatz's prior course of conduct. After receipt of the July 23, 2024 acceleration notice, Hatz endeavored to enter into negotiations with Fannie Mae – unfortunately without success. At all times, Hatz and the Guarantor, Mr. Steiner,

have been and remain committed to maintaining a positive relationship with Fannie Mae to prevent future issues.

Receiverships are warranted to address insolvent, contumacious and/or intransigent borrowers. The Borrowers, here, are none of those things. Moreover, Mr. Steiner continues, as Guarantor, to stand behind the Loan and to protect Plaintiff's collateral. Given Hatz's demonstrated commitment to maintaining the Properties and Mr. Steiner's active involvement, the appointment of a receiver is unwarranted here and would only serve to increase costs for all parties without providing any real benefit.

### III. LAW AND ARGUMENT

This Court should refuse to employ the extraordinary, drastic, and premature remedy of appointing a receiver. The appointment of a receiver, while within a district court's discretion, is an "extraordinary remedy" that a court should employ with the "utmost caution" and grant "only in cases of clear necessity to protect plaintiff's interests in the property." *Wells Fargo Bank Minnesota, N.A. v. Finelli*, No. 5:06-CV-1922, 2006 U.S. Dist. LEXIS 99953, at *4-5 (N.D. Ohio. Oct. 4, 2006), citing 12 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2983 at 24. "The general rule is that a receiver will not be appointed unless it appears that the appointment is necessary either to prevent fraud or to save the property from irreparable injury or threatened loss or destruction." *Macon Lumber Co. v. Bishop & Collins*, 229 F.2d 305, 307 (6th Cir. 1956). No precise formula determines the appointment of a receiver. *Finelli*, *supra*. Instead, courts generally consider a number of factors, including: fraudulent conduct by the defendant – which has not been alleged; imminent danger of the property being lost, concealed, injured, diminished in value, or squandered – absent, as demonstrated herein; inadequacy of available legal remedies (see below); lack of less drastic equitable remedies (see below); and, likelihood that the appointment will do more harm than good (see below). *Id.*; *see also* Wright, Miller & Marcus, §

2983 at 26-29, *De Boer Structures (U.S.A.), Inc. v. Shaffer Tent and Awning Co.*, 187 F. Supp. 2d 910, 925 (S.D. Ohio 2001). None of those factors are before this Court. In the absence of a Receiver, Plaintiff simply is not threatened by irreparable loss. Borrowers, backed by their Guarantor, have shown their commitment to addressing the concerns raised by Plaintiff.

Courts have denied appointment of a Receiver in far more equivocal circumstances. "The appointment of a receiver for a solvent going business corporation is a drastic measure which will be taken by a court of equity in the exercise of its discretion only where there is imminent danger of loss... and there is no adequate remedy at law. *Pappas v. Medas*, No. 1:18CV1514, 2019 U.S. Dist. LEXIS 10884, at *4 (N.D. Ohio. Jan. 23, 2019) (denying the appointment of a receiver due to liens on the defendant's assets despite evidence of fraudulent conduct), *Limbright v. Hofmeister*, No. 5:09-cv-107-KSF, 2012 U.S. Dist. LEXIS 163360 (E.D. Ky. Nov. 15, 2012) (denying the appointment of a receiver in part due to the lack of showing of imminent danger that property would be lost, concealed, or diminished in value).

Here, Hatz is current on its monthly payments. This fact alone belies Fannie Mae's assertions that it needs the urgent relief of the drastic remedy of receivership. The security of Plaintiff's loan is further evidenced by Mr. Steiner's commitment to fund temporary shortfalls as well as the repairs and maintenance Hatz has already completed on the Properties. Virtually all of Fannie Mae's stated concerns have been addressed – despite the intervening Jewish holidays – and there is no imminent danger of the Properties being lost or destroyed. Fannie Mae's assertions to the contrary are misplaced.

Hatz has also demonstrated a commitment to continue working with Fannie Mae. It has provided Fannie Mae with much of the information it requested and is open to the appointment of a new property manager satisfactory to Fannie Mae. With the lines of communication open, and

Hatz's demonstrated commitment to improving the Properties, the appointment of a Receiver would serve only to add unnecessary layers of expense which will burden the Properties, ultimately, at the expense of all parties. Fannie Mae has not borne its burden of proof to show otherwise. As is set forth below, Plaintiff fails to demonstrate the requisite elements required to even suggest that a Receiver should displace Hatz.

### A. Other Legal Remedies are Adequate

First and foremost, Plaintiff has failed to provide any factual or legal basis showing it can prevail on two essential factors – that other legal remedies are inadequate, and that there is a lack of less drastic equitable remedies.

In *Limbright v. Hofmeister*, No. 5:09-cv-107-KSF, 2012 U.S. Dist. LEXIS 163360 (E.D. Ky. Nov. 15, 2012), the court found in a previous opinion that certain assets were fraudulently transferred to avoid creditor obligations, and the plaintiff moved for a receiver to be appointed. In denying the plaintiff's motion to appoint a receiver, the court stated as support for its decision that while the assets had been subject to a "history of fraudulent activity", there was no evidence that the depletion of assets had continued to the present, that the plaintiff had failed to present "current, specific evidence" that legal remedies were inadequate or that there was a lack of less drastic equitable remedies, simultaneously, as here, the defendants "vigorously argued" that it was likely that the appointment of a receiver would do more harm than good. *Id.* at *9-10.

Fannie Mae's lack of evidence regarding these factors is similarly fatal to its motion here. There is no immediate risk of the depletion of assets as Borrowers and their Guarantor have continued to invest time and resources maintaining the Properties. Indeed, imposition of a Receiver and its counsel in these circumstances is the true threat to deplete resources. Furthermore, Hatz has demonstrated its interest in resolving any differences with Fannie Mae. If, despite Hatz's demonstrations of good faith, Fannie Mae still wishes to pursue claims of technical defaults against

8

Hatz, it can do so through the normal course of litigation without any risk to its collateral. Critically, it should be noted, Plaintiff has not made a single allegation of illegal or fraudulent activity. This simply is not a situation where extraordinary measures are required.

To the contrary, communication between the parties has been productive, and both parties share an interest in the preservation of the value of the Properties. This dialogue weighs heavily in favor of a finding that less drastic equitable remedies than receivership exist to efficiently preserve the properties as well as a finding that the appointment of a receiver will do more harm than good. *See Grayiel v. AIO Holdings, LLC*, 2023 U.S. Dist. LEXIS 143254, *72 (holding that the parties' "mutual willingness to work together to ensure the assets are properly preserved" weighs heavily in favor of less drastic equitable remedies existing, and holding that the defendants' willingness to "voluntarily transfer management of the… Assets to a third party" shows that an appointment would do more harm than good). That analysis applies with even greater force here.

    **B.**    **There is no imminent danger to the property, and it is likely that the appointment of a receiver will do more harm than good.**

There is also no imminent danger of the property being lost, concealed, injured, diminished in value, or squandered. The conditions that Plaintiff has taken issue with have been remedied or are in the process of being remedied. (*See generally* Gold Decl.) The fire extinguishers have been serviced, (*Id*. at ¶ 4), the gas was never turned off, (*Id*. at ¶ 5), any broken or open windows have been repaired, (Id. at ¶ 6), and trash has been cleaned up. (*Id*.) While the elevators have yet to be repaired, quotes have been obtained, contracts entered into, and service appointments have been scheduled. (*Id*. at ¶ 8). To summarize, the "meat" of Fannie Mae's allegations in its Complaint and Motion are no longer operative. In the absence of imminent danger to the Properties or tenants the appointment of a receiver will do more harm than good.

    **C.**    **The Guarantor, Mr. Steiner, continues to stand behind the Properties and the Borrowers' obligations under the Loan.**

The appointment of a receiver is also unwarranted because Hatz is not in default on its payments. Contrary to Fannie Mae's allegations, Hatz did timely pay its Monthly Debt Service Payments on June 1, 2024 and July 1, 2024. (*Id.* at ¶ 3.) While a payment in April 2024 was mistakenly paid late, Defendants have made their best efforts to satisfy all outstanding obligations, and all payments are currently up to date. (*Id.*) Moreover, Mr. Steiner remains committed to back up the Borrowers' Loan obligations.

A simple failure to make one payment does not justify the drastic remedy of receivership, even when authorized by contract. *Crestmark v. First Western Trust Bank*, 2020 U.S. Dist. LEXIS 182947, *7. In *Crestmark*, two motions for appointing receivers were at issue. *See generally id.* The plaintiff argued that the contract between the plaintiff and defendants allowed the plaintiff to appoint a receiver in the event of default, and that the defendants had breached the contract by failing to provide financial reporting and failing to appoint a consultant. *Id.* at *3-4. In denying the plaintiff's motion, the court held that the plaintiff had failed to show that "the normal legal processes of debt collection and contract enforcement, or other equitable remedies, [were] so inadequate that receivership is necessary". *Id.* The court also held that a defendant's failure to make payments to the intervenor did not justify a receivership, as "simply presenting evidence of other creditors and a failure to meet obligations is not itself extraordinary and does not, in the court's opinion, warrant the appointment of a receiver before discovery has begun. If Intervenor proves Defendants breached a contract, Intervenor can enforce its rights through normal legal processes." *Id.* at *7.

Similarly, here, to the extent Plaintiff can demonstrate a meaningful default by Hatz, the normal legal processes for debt collection and contract enforcement would be adequate - without

10

resort to a receiver. Even more critically, Hatz is currently up to date on its contractual, monthly payments to Fannie Mae. No receiver is requisite in these circumstances.

### D. The Properties are not in danger of being lost.

Finally, Fannie Mae also makes the argument that the appointment of a receiver is necessary because Hatz's financial position is deteriorating. As an initial matter, however, Hatz is up-to-date on its payments which undercuts any allegation that Hatz cannot meet its financial obligations. While there are more vacancies at the Properties than is desirable, this is in part due to unprecedented storms that swept through the Cleveland, Ohio area in the summer of 2022. The resulting storm damage to the Properties rendered a number of units un-rentable. Hatz has filed and pursued insurance claims and is working to determine how best to renovate and repair the Properties in a way that will prove most valuable in the long-run. Critically, Mr. Steiner, the Guarantor of the Loan, remains committed even with these short-term vacancies and the expense of repair and renovation, to ensure that Hatz continues meeting its financial obligations to Fannie Mae and will continue to do so while making renovations.

Hatz has also made it clear that it is willing to work with Fannie Mae to hire a property manager acceptable to both parties, recognizing that the number of vacancies has grown to unacceptable levels, and the condition of the Properties has not been at the level that Hatz expects and requires of its properties. Thus, given Hatz's willingness to work with Fannie Mae to continue to keep the Properties in good condition and fill current vacancies, the appointment of a receiver would be a drastic, extraordinary, and unwarranted remedy.

## IV. CONCLUSION

For the foregoing reasons, Hatz respectfully requests that this Court deny Fannie Mae's *Emergency Ex Parte Motion for Immediate Appointment of Receiver.* Alternatively, Hatz requests that the Court defer ruling while Hatz works to resolve Plaintiff's stated concerns.

**UB GREENSFELDER LLP**

*/s/ Amanda J. Martinsek*
Amanda J. Martinsek (0058567)
1660 West 2nd Street
Suite 1100
Cleveland, OH 44113
Telephone: (216) 583-7000
Fax: (216) 583-7001
amartinsek@ubglaw.com


**OFFIT KURMAN, P.A.**

*/s/ Joyce A. Kuhns*
1954 Greenspring Drive, Suite 605
Timonium, MD 21093
(410) 209-6400 (phone)
(410) 209-6435 (facsimile)
jkuhns@offitkurman.com


**ATTORNEYS FOR DEFENDANTS HATZ ONE LLC, HATZ TWO LLC, CLEVELAND 2 LLC, CLEVELAND 3 LLC, AND MENDEL STEINER**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2024, a true and accurate copy of the foregoing was filed with the Clerk of the Court and served on counsel of record using the CM/ECF system.

                                     */s/ Amanda J. Martinsek*
                                     Amanda J. Martinsek (0058567)

                                     *Attorney for Defendants Hatz One LLC, Hatz Two LLC, Cleveland 2 LLC, Cleveland 3 LLC, and Mendel Steiner*