# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| FANNIE MAE, | : |
|         Plaintiff, | :   Case No. 1:24-cv-01606-BMB |
| -vs- | :   Judge: Hon. Bridget Meehan Brennan |
| HATZ ONE LLC, *et al.*, | : |
|         Defendants. | : |

## *PROPOSED* SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO APPOINT RECEIVER

Plaintiff Fannie Mae ("Plaintiff" or "Fannie Mae"), by and through its undersigned counsel, hereby submits this supplemental brief in support of motion to appoint a receiver (the "Motion to Appoint") based on new evidence. A Property Condition Assessment (the "PCA"), which was prepared by Armada Analytics, Inc. based on a site visit at the Properties conducted on November 5, 2024 and November 6, 2024. Plaintiff received the PCA more than 30 days after the Motion to Appoint was fully briefed. To the extent a ruling on that motion is not forthcoming (which would admittedly render this motion moot), Plaintiff respectfully requests that this Court exercise its broad discretion to control its docket (*see*, *generally*, *American Civil Liberties Union of Kentucky v. McCreary County, Ky.*, 607 F.3d 439, 451 (6th Cir. 2010) ("a district court has broad discretion to manage its docket"); *Moore v. Ethicon Inc.*, No. 1:20cv933, 2020 WL 13490352, at *2 (N.D. Ohio Aug. 25, 2020) (permitting successive summary judgment motion and supplemental briefing in circumstances less compelling than those here)) and grant Plaintiff leave to submit this supplemental brief to address the new evidence recently created.

19825593

## **NEW EVIDENCE THAT DID NOT EXIST AT THE TIME OF THE MOTION TO APPOINT FURTHER CONFIRMS THAT THE MOTION TO APPOINT SHOULD BE GRANTED WITHOUT DELAY**

 A. **Introduction.**

To provide important context to this dispute, Defendants Hatz One LLC, Hatz Two LLC, Cleveland 2 LLC, Cleveland 3 LLC, and Mendel Steiner (hereinafter collectively, the "Borrowers") have no liability under the Loan Agreements[1] at issue in these cases, unless certain specific, egregious actions are committed. *See* Loan Agreements, §3.01-3.03. To the extent no recourse trigger occurs, Borrowers have no personal liability for the outstanding principal balance. As such, Borrowers' suggestion that Mr. Steiner is "standing behind" the Properties is empty. Even if he is funding certain (minimal) repairs or making certain payments (in amounts less than the amount owed), he has not made the necessary investments to satisfy Borrowers' obligations under the Loan Agreement or to adequately protect the Properties or the health and safety of the tenants residing thereat. Borrowers are obligated to maintain the Properties, to prevent waste and destruction at the Properties, and to keep all units online and rentable. Borrowers' failure to make these investments results in a diminution in value of the Properties.

When put into context, Borrowers' limited liability means that Fannie Mae must recover the full outstanding balance from the Properties—the only collateral. Barring some egregious recourse triggering event, Fannie Mae, and Fannie Mae alone, bears the risk of loss if the Properties decline in value. For this reason, the Loan Documents are specifically and intentionally structured to provide Fannie Mae aggressive remedies to protect the Properties as collateral. Fannie Mae's ability to declare property condition events of default and to appoint a receiver when the property condition declines are critical "arrows" in its quiver of remedies. As explained below, the condition of the

---

[1] Capitalized terms used herein and not otherwise defined shall have the same meaning as set forth in Fannie Mae's Complaints. The use of plural defined terms shall mean both of the singular defined terms used in the respective Complaints.

Properties is declining, Borrowers' property management has proven ineffective in addressing even the most concerning issues, and a receiver is necessary to protect the value of the collateral and (most importantly) the safety of the tenants.

### B. The Condition Of The Properties Is Unacceptable And Declining.

Contrary to Borrowers' assertions, the condition of the Properties is unacceptable, and declining. On October 14, 2024, Defendants Hatz One LLC, Hatz Two LLC, Cleveland 2 LLC, Cleveland 3 LLC, and Mendel Steiner (hereinafter collectively, the "Borrowers") filed their memorandum in opposition (the "Opposition") to Plaintiff's request for appointment of a receiver. In the Opposition, Borrower stated that the deficiencies in property condition "have been or are being addressed."

It soon became obvious that Borrower's assertion was inaccurate. On November 5, 2024 and November 6, 2024— a mere three weeks after the Borrower's incorrect representations in the Opposition—a vendor retained by Plaintiff (Armada Analytics, Inc.) conducted a site visit at the Properties. Based on the vendor's observations at the site visit, the vendor prepared a Property Condition Assessment (the "PCA"). The PCA identified, among other issues, certain "Life Safety" items requiring immediate repair to protect safety of tenants, and more than $4.4 million in "Critical Repair" items requiring completion within the next six months to prevent critical loss. A copy of the PCA is attached as Exhibit A.[2]

As shown in the PCA, Borrower's efforts have fallen far short of what is necessary to properly maintain the Properties. The PCA identified a "life/safety" issue, in which wood-framed exterior stairways and handrails had deteriorated—presenting an immediate safety risk to tenants. The PCE reported active leaks and damage observed at the membrane roofs and the slate shingle

---

[2] Importantly, the PCA was based on review of only 76 units out of 308 total units. Property management did not have keys to enter certain vacant units and failed to provide notice to tenants of the inspection. As such, access was denied to many of the occupied units.

roofs. In addition, three gas-fired boilers need to be replaced (due to lack of routine maintenance), and all other boilers need to be inspected, serviced, and brought to good condition. At the time of the inspection, all elevators were still inoperable, requiring immediate repair to restore proper function. At least one of the occupied units inspected (Unit 2653-10) was found to have severe unmitigated water damage. The vacant and down units required significant renovation and repairs, including mold remediation and repair of sanitary lines. In addition to these life/safety and critical repair items, the PCA identifies significant deferred maintenance items that must be addressed to prevent further deterioration of the Properties.

Given the current condition, the Properties are continuing to deteriorate, rather than improve. The PCA demonstrates that Plaintiff's collateral is diminishing in value and that necessary maintenance items are being neglected. *See* Exh. A, PCA. More importantly, the health and safety of the residential tenants is threatened. Exterior stairways are deteriorating and unsafe. *Id*. Boilers that provide heat to the Properties are in need of repair and replacement. *Id*. All elevators remain inoperable. *Id*. Active water leaks in the roofs have not been repaired. *Id*. Severe water damage was observed in vacant *and* occupied units. *Id*. Mold growth has not been remediated, and will get increasingly problematic unless the active water leaks are addressed and the water damage repaired. *Id*.

The condition of the Properties is even more concerning, given Borrowers' representations that they demonstrated a "commitment to fulfill [their] contractual obligations" and a "willingness to work with Fannie Mae to assuage its concerns about the condition and maintenance of its collateral." Opposition, ECF No. 13, PageID 417. If this is the Borrowers' property management team's best efforts, immediate appointment of a receiver is even more necessary and appropriate than Plaintiff initially understood.

4

### C.     **Conclusion.**

Despite Borrowers' suggestion that they have "demonstrated commitment to improving the Properties," Borrowers have allowed the Properties to deteriorate to the point of requiring more than $4.4 million in critical repairs (plus hundreds of thousands more necessary to address less critical deferred maintenance). *See* Exh. A, PCA. To the extent no recourse trigger occurs, Borrowers have no personal liability for the outstanding principal balance. Under these circumstances, Fannie Mae must recover the full outstanding balance of the loan amount from a sale of the Properties - the only collateral. As such, Fannie Mae, and Fannie Mae alone, bears the risk of loss if the Properties decline in value. As such, Fannie Mae must be entitled to enforce its contractual remedies to take control of the Properties, mitigate risk of further harm, address critical repair items and life/safety concerns, and bring the Properties back to the appropriate condition.

While Plaintiff maintains that the evidence before the Court fully supports the Motion to Appoint, to the extent the Court has questions or concerns about the Motion to Appoint or the evidence presented, Plaintiff requests a status conference be scheduled or an evidentiary hearing be set to fully consider the issues.

                                                                                         Respectfully submitted,

                                                                                         /s/ *Matthew D. Gurbach*
                                                                                         Matthew D. Gurbach (0076707)
                                                                                         Brendan Heil (0091991)
                                                                                         BRICKER GRAYDON LLP
                                                                                         1100 Superior Avenue, Suite 1600
                                                                                         Cleveland, Ohio 44114
                                                                                         Tel: (216) 523-5405
                                                                                         mgurbach@brickergraydon.com
                                                                                         bheil@brickergraydon.com

> Justin W. Ristau (0075222)
> BRICKER GRAYDON LLP
> 100 South Third Street
> Columbus, Ohio 43215
> Tel: (614) 227-2300
> jristau@brickergraydon.com
>
> *Counsel for Plaintiff Fannie Mae*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing ***PROPOSED SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO APPOINT RECEIVER,*** was electronically filed on December 6, 2024. Notice of this filing will be sent to all registered parties by operation of the Court's ECF filing system or by regular U.S. mail as indicated below:

Regular U.S. mail:

Joyce A. Kuhns
Offit Kurman-Timonium
Suite 605
1954 Greenspring Drive
Timonium, MD 21093
jkuhns@offitkurman.com

> /s/ *Matthew D. Gurbach*
> Matthew D. Gurbach (0076707)

6