UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FANNIE MAE, | ) | CASE NO. 1:24-CV-1606 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| HATZ ONE LLC, *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

Before the Court is Plaintiff Fannie Mae's Motion for Immediate Appointment of Receiver.  (Doc. 3.)  Defendants opposed (Doc. 13) and Fannie Mae replied (Doc. 15).  With leave of Court, Plaintiff Fannie Mae submitted a supplemental brief (Doc. 23-1) and Defendants replied (Doc. 25).  For the reasons below, the Motion is GRANTED.

I. **Background**

    A. **Factual Background**

On October 30, 2020, Defendants Hatz One LLC, Hatz Two LLC, Cleveland 2 LLC, and Cleveland 3 LLC ("Borrowers") entered into a multifamily loan subject to the terms and conditions of a Multifamily Loan and Security Agreement (the "Loan Agreement") to purchase various properties in Shaker Heights, Ohio.  (Doc. 1-2.)  Defendant Mendel Steiner ("Mr. Steiner"), the sole member of each of the Borrowers, was guarantor of the loan.  (Doc. 1-5.)  Plaintiff Fannie Mae ("Fannie Mae") is the current holder of the note.  (Docs 1-6, 1-7.)  The note is secured by an interest in the properties owned by Borrowers.

The properties include multiple separate buildings comprising 308 total rentable apartments. (Doc. 3-1 at 298–99; Doc. 13 at 417.)[1]  Pursuant to the Loan Agreement, Borrowers were required to make monthly installment payments. (Doc. 1-2 at 53.)  The present dispute arose because Borrowers allegedly failed to make the April 1, 2024 payment. (Doc. 1 at 41; Doc. 13 at 418; Doc. 15 at 556.)  Borrowers also allegedly failed to make a payment on May 1, 2024. (Doc. 15 at 556.)  Borrowers made a payment in June 2024, which was applied to the April payment. (*Id.*)  And Borrowers made a payment in July 2024, which was applied to the May payment. (*Id.*)  Borrowers dispute the exact missed payments and if the payments are currently up to date, but there is no dispute Borrowers did miss at least one payment. (Doc. 13 at 418.)  Because Borrowers missed payments, on July 23, 2024, Fannie Mae notified Borrowers of acceleration of the loan pursuant to the Loan Agreement. (Doc. 1-8.)

On June 11, 2024, an inspection revealed Borrowers failure to comply with agreement terms, with the failures posing an imminent threat to the life, health, and safety of the residents. (Doc. 3-1 at 301.)  On August 6, 2024, Fannie Mae conducted a follow-up inspection and discovered several urgent repairs were necessary: fire extinguishers had not been serviced for over two years, three elevators were not operational, gas was in danger of being shut off, and trash and other waste was accumulating in the buildings leading to unsanitary conditions. (*Id.*)  Fannie Mae alleged the buildings had broken windows, windows left unsecured, and other conditions that threatened the viability of the structures. (*Id.*)  These issues and others have been detailed in a property condition assessment conducted in November 2024 which recommended approximately $4.5 million in repairs for "life safety items" and "critical items." (Doc. 23-2.)

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

The report confirms many of the above discussed issues and others. Borrowers do not dispute these issues were present at the properties, instead asserting some of the issues were exaggerated. (Doc. 13 at 419.) Further, Borrowers report the issues have been subsequently addressed by Mr. Steiner (or an associate of Mr. Steiner, Leo Gold, who was acting as a representative of Borrowers). (*Id.*; *see generally* Docs. 25-1–25-11.)

Fannie Mae further contends the Borrowers' financial position is rapidly deteriorating. (Doc. 3-1 at 306.) While Fannie Mae has not accessed all financial records, it did obtain information specific to vacancy levels. In December 2022, one unit was vacant out of 308 units at the properties. (Doc. 15 at 565.) By October 4, 2024, due to the issues detailed above, there were 229 vacant units with only 79 occupied. (*Id.*) Fannie Mae alleges that many of the vacant units are not rentable due to unsafe conditions. (*Id.*) Because the rentable properties are the sole source of income for Borrowers, Fannie Mae alleged the financial condition of Borrowers must be deteriorating. (*Id.*) Again, Borrowers do not dispute many units are vacant, but instead argue Mr. Steiner (or his representative) has since put the properties back into a position where vacant units can be rented. (Doc. 13 at 421.) And Borrowers stressed Mr. Steiner remained committed to making timely payments on the loan. (*Id.*)

On February 10, 2025, Plaintiff's counsel filed a Notice of Suggestion of Death, which stated that Mr. Steiner passed away on January 9, 2025.

    **B.**    **Procedural History**

On September 19, 2024, Fannie Mae commenced this action, asserting six causes of action: *in rem* default (count one); limited recourse personal liability of borrower and guarantor under the loan (count two); full recourse personal liability of borrower and guarantor under the loan (count three); foreclosure (count four); enforcement of assignment of leases (count five);

and appointment of receiver (count six). Simultaneously, Fannie Mae filed an Emergency Motion for Immediate Appointment of Receiver. (Doc. 3.) On October 11, 2024, Defendants answered the complaint (Doc. 12), and on October 14, 2024, opposed the motion for a receiver (Doc. 13). Defendants also moved for an evidentiary hearing. (Doc. 14.) After the parties fully briefed the motion for a receiver and motion for evidentiary hearing, the Court scheduled a status conference for February 11, 2025. (Non-document Notice, 2/5/2025.)

On February 10, 2025, Fannie Mae filed a Notice of Suggestion of Death. (Doc. 26.) During the February 11, 2025 status conference, Defendants' counsel explained how Mr. Steiner's death prompted probate proceedings in New York which, in turn, put their status as counsel in question. At the status conference, the Court granted the motion for evidentiary hearing, but advised that if representation concerns prevented defense counsel from participating in the evidentiary hearing, the Court would consider the motion without a hearing. (Non-document Minute Order, 2/11/2025.) On February 26, 2025, Defendants filed a Notice of Lack of Authority, which reported counsel had not yet obtain authority to continue representation. (Doc. 29.)

## II. Legal Standard

Under Federal Rule of Civil Procedure 66, a "district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court." *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). "A receivership is an 'extraordinary remedy' that a court should employ with the 'utmost caution' and grant 'only in cases of clear necessity to protect plaintiff's interests in the property.'" *Pension Ben. Guar. Corp. v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414 (6th Cir. 2015) (quoting 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2983). "There is no precise formula for determining when

appointment is warranted[.]" *Integrity Energy, Ltd. v. Hunter*, No. 18-cv-978, 2021 WL 3109909, 2021 U.S. Dist. LEXIS 136291, *2 (N.D. Ohio July 22, 2021) (citing *De Boer Structures (U.S.A.), Inc. v. Shaffer Tent & Awning Co.*, 187 F.Supp.2d 910, 925 (S.D. Ohio 2001)).  Courts consider the following factors:

> (1) the adequacy of the security; (2) the financial position of the borrower; (3) any fraudulent conduct on the defendant's part; (4) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (5) inadequacy of legal remedies; (6) the probability that harm to the plaintiff by denial of appointment would outweigh injury to parties opposing appointment; (7) the plaintiff's probable success in the action and the possibility of irreparable injury to the plaintiff's interest in the property; and (8) whether the plaintiff's interests sought to be protected will in fact be well-served by a receivership.

*PNC Bank, Nat'l Ass'n v. Goyette Mech. Co.*, 15 F.Supp.3d 754, 758 (E.D. Mich. 2014); *see also Pension Be. Guar. Corp.*, 630 F. App'x at 414 (explaining factors district courts consider in making receiver determinations, including those listed above).  In addition, district courts in this Circuit have also considered whether the parties consented to the appointment of a receiver in advance.  *PNC Bank, Nat'l Ass'n v. Marketing Goldmines Consulting LLC*, No. 20-cv-10672, 2021 WL 21762, 2021 U.S. Dist. LEXIS 604, *6 (E.D. Mich. Jan. 4, 2021).

The party seeking the appointment of a receiver bears the burden of proof.  *PNC Bank*, 15 F.Supp.3d at 758 (Rule 66 "authorizes the appointment of a receiver if a person with interest in the property provides sufficient justification.").  Because the nature of the relief is "extraordinary," courts have explained the burden is "heavy."  *Citizens Bank, N.A. v. Nostrum Laboratories, Inc.*, No. 23-20765, 2024 WL 3199951, 2024 U.S. Dist. LEXIS 113327, *14 (D.N.J. June 27, 2024) ("The party seeking appointment . . . bears the heavy burden of justifying the need for a receiver).

**III.** <u>Analysis</u>

    **A.**     **Receiver Factors**

Mr. Steiner's unfortunate passing presents a significant change of events since the parties' briefs were submitted.  In their opposition brief, Borrowers relied heavily on Mr. Steiner's ability to maintain the properties.  Borrowers repeatedly explained Mr. Steiner, as guarantor of the note, was able to fully guarantee the note and make any necessary payments and repairs.  Borrowers also stressed that Mr. Steiner has been—and will be—willing to work with Fannie Mae to ensure compliance with all conditions of the Loan Agreement.  These assurances no longer remain.

Further complicating the Court's ability to rely on Borrowers' prior assurances that Mr. Gold could act in place of Mr. Steiner are the circumstances of notice to the Court of Mr. Steiner's passing.  On February 11, 2025, Borrowers' counsel acknowledged learning of Mr. Steiner's passing on or one day after he passed away.  Counsel did not notify the Court of this significant change in Borrowers' circumstances, Fannie Mae did.  Mr. Steiner was each Borrowers' sole member.

***Adequacy of the Security and Financial Position of the Borrower.***  Fannie Mae argues Borrowers' financial condition is deteriorating, and in turn, the adequacy of security is rapidly becoming insufficient. (Doc. 3-1 at 306.)  In large part, Fannie Mae argues the rapid decline in occupancy, combined with large amounts of deferred maintenance, indicates Borrowers' financial distress. (*Id.* at 306–17; Doc. 15 at 564–65.)  Because rent payments are the only income for Borrowers, the decline in occupancy, Fannie Mae argues, puts Borrowers in immediate financial constraints. (Doc. 15 at 565.)  Fannie Mae also directs the Court to missed installment payments and evidence Borrowers have failed to timely pay property taxes.

Borrowers argue their financial position does not warrant the appointment of a receiver. Borrowers explain they are not in default of any current payments and that a single failure to pay on time does not support the appointment of a receiver. (Doc. 13 at 423–24.) And, to reassure Fannie Mae and this Court, Borrowers explain "Mr. Steiner remains committed to back up the Borrowers' Loan obligations." (*Id.* at 424.) Continuing, Borrowers explain "[c]ritically, Mr. Steiner, the Guarantor of the Loan, remains committed even with these short-term vacancies and the expense of repair and renovation, to ensure that Hatz continues meeting its financial obligations to Fannie Mae and will continue to do so while making renovations." (*Id.* at 425.)

Given Mr. Steiner's passing, the arguments relating to his financial support and as a guarantor to the loan cannot be given weight. Instead, given recent events, these facts now weigh in favor of a receiver. In any event, the Court finds the financial position of the Borrowers in this case to weigh in favor of a receiver. Borrowers source of income is rent from tenants. However, the properties experienced a precipitous decline in tenancy over the course of just two years—a drop from 99% to 25%. (Doc. 15 at 565.) And the rents being collected are valued lower than before. (*Id.*) Some of the various buildings that make up the properties have no tenants at all. Borrowers do not dispute the vacancy statistics. Borrowers' only response is that Mr. Steiner will continue to stand by the loan and are working to address vacancy issues. Given recent circumstances, this is not enough. This factor weighs in favor of appointing a receiver.

***Fraudulent Conduct.*** Fannie Mae does not explicitly argue Defendants engaged in fraudulent conduct. However, Fannie Mae does allege it discovered signs at the properties during inspections which told tenants to make rent payments to an entity called Cleveland Ohio Residents, LLC. (Doc. 15 at 562.) This entity was wholly owned by Mr. Steiner. (Doc. 13-2 at 434.) Only the approved "Guardian" in the Property Management Agreement is entitled to

collect rents.  (Doc. 15 at 562.)  Together, Fannie Mae alleges Defendants may have engaged in the diversion of rents and income.  (*Id.*)  Borrowers have not responded to this allegation. Without further information, and without the benefit of further discovery, the Court is unable to say this factor weighs in favor of a receiver.  This factor is neutral.

***Imminent Danger of the Properties Being Lost, Concealed, Injured, Diminished in Value, or Squandered.***  Fannie Mae argues deferred maintenance has put the properties in danger of being diminished in value or squandered.  (Doc. 3-1 at 305.)  In support, Fannie Mae directs the Court to the various maintenance issues discovered during inspections.  (*Id.*; Doc. 23-2.) Fannie Mae has also submitted recent citations from the City of Cleveland regarding building code violations for the properties.  (Doc. 26-1.)  Borrowers argue a receiver is unnecessary because necessary repairs have been made and other concerns continue to be addressed.  (Doc. 13 at 423; Doc. 25 at 1053.)

There is no question Borrower's briefing demonstrates some of the necessary repairs have been made to the properties.  Borrowers have presented evidence to this Court that a representative of Borrowers, Leo Gold, has overseen these repairs.  However, it is equally true Borrowers allowed such repairs and necessary maintenance to go unremedied for years.  The evidence submitted by Fannie Mae reveals significant and ongoing damage to the properties due to mismanagement.  Inspections of just part of the properties have revealed water damage, mold, broken pipes, missing drywall, broken elevators, rampant trash, and the collection of unsanitary waste, among other issues requiring immediate repair.  (Doc. 23-2.)  These issues are well-documented in photographs.

Relatedly, the drastic reduction in tenancy over the course of just two years is strong evidence the properties are in imminent danger of diminished value.  In a similar case, a district

court granted a motion for a receiver where the occupancy rate for a building was 41%, with 147 units vacant, whereas the overall market vacancy was 91-94% occupied. *See Fed. Nat. Mortg. Ass'n v. Mapletree Investors Ltd. Partnership*, No. 10-cv-10381, 2010 WL 1753112, 2010 U.S. Dist. LEXIS 42420, *12 (E.D. Mich. Apr. 30, 2010). To the court, the vacancy rate confirmed the other evidence of waste, including substantial damage to portions of the property. *Id*. Similarly, here, the evidence presented relating to the damage of the properties, along with the considerable decline in occupancy, demonstrates the properties—and Fannie Mae's only collateral—are at substantial risk of imminent danger.

The facts of this case are further complicated by Mr. Steiner's passing. It is not clear if anyone has the authority to continue overseeing repairs to the properties. While Borrowers have pointed to Mr. Gold's efforts, it is questionable whether those efforts can continue. Mr. Gold, unlike Mr. Steiner, is not a guarantor and is under no legal obligation to continue repairs. His status at present appears to be that of a volunteer, or perhaps someone expecting deferred compensation, neither of which presents the same level of accountability as an owner or guarantor. On balance, there is in imminent danger of continued harm to the properties. This factor weighs in favor of appointing a receiver.

***Inadequacy of Legal Remedies.*** Borrowers argue Fannie Mae's legal remedies—should it continue to pursue them—are sufficient in this case. However, given the status of the properties and the status of Borrowers, the legal remedies at this stage are unlikely to be adequate. This factor weighs in favor of appointing a receiver.

***Cost and Benefits of a Receiver.*** Fannie Mae argues the appointment of a receiver would do far more good than harm. (Doc. 3-1 at 306.) Fannie Mae argues the receiver can immediately address any continuing issues relating to life, health, and safety. (*Id.*) Then a receiver could

address other issues to make the properties rentable again, including an on-site property manager. (*Id.*)

In response, Borrowers argue a receiver would add unnecessary layers of expense which will burden the properties.  (Doc. 13 at 422.)  Borrowers also argue they have demonstrated a willingness to work with Fannie Mae on issues, including conducting extensive repairs, which demonstrates a lack of a need for a receiver.  (*Id.*)

The Court finds that a receiver in this case does more good than harm.  First, there is no harm or burden to Borrowers by installing a receiver.  Second, a receiver can immediately begin necessary repairs to put the properties into a rentable condition.  While Borrowers argue they have worked to do so, the current state of the properties belies these efforts.  The minimal costs of a receiver do not outweigh the vast benefits of appointing a receiver given the facts in this case.  This factor also weighs in favor of appointing a receiver.

***Plaintiff's Probability of Success.***  At this early stage in the proceedings, the Court is confronted with a motion for a receiver before any judgment on the merits of Fannie Mae's claims.  However, it is undisputed Borrowers failed to make at least one payment (though Fannie Mae argues its multiple payments).  (Doc. 13 at 424.)  Fannie Mae, as a result of its investigation in this case and Borrowers' own opposition, alleges a number of further violations.  (Doc. 15 at 566.)  While these additional violations may bolster its claims, Fannie Mae has sufficiently demonstrated likelihood of success on default for failing to timely submit the monthly installment payments.  This factor weighs in favor of appointing a receiver.

***Whether Plaintiff's Interests will be Protected and Served by a Receiver.***  There is no dispute a receiver will protect and serve Fannie Mae's interest in this case.  A receiver will advance Fannie Mae's interest in the properties.  Borrowers do not dispute this factor.

> ***Consent***.  The recorded mortgage contains the following provision:
>
> > [I]f an Event of Default has occurred and is continuing . . . [Fannie Mae] may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property[.]  If [Fannie Mae] elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Security Instrument, expressly consents to the appointment of such receiver[.]

(Doc. 1-4 at 203–04.)  Fannie Mae argues the consent to receivership provision in Borrowers' mortgage should be dispositive, or at the least weigh strongly in favor of a receiver.  (Doc. 3-1 at 304–05.)  Borrowers do not offer argument in response to the consent issue.  Some courts have held a consent provision is dispositive of the receiver issue.  *See e.g.*, *Fannie Mae v. Maple Creek Gardens, LLC*, No. 09-14703, 2010 WL 374033, 2010 U.S. Dist. LEXIS 5342, *7 (E.D. Mich. Jan. 25, 2010) ("This Court believes that Maple Creek's agreement in the Mortgage to the appointment of a receiver upon its default alone is sufficient to conclude that Fannie Mae is entitled to such an appointment at this time"); *RBS Citizens, N.A. v. 3800 Varsity Drive*, No. 11-11160, 2011 WL 13220758, 2011 U.S. Dist. LEXIS 174235, *8 (E.D. Mich. Sept. 9, 2011) (discussing decisions where courts have held consent to receiver dispositive).  Others have held that it is one factor—albeit a strong factor—among others to consider.  *Goyette Mech. Co.*, 15 F.Supp.3d at 758 ("the parties' advance consent to the appointment of a receive is a strong factor weighing in favor of appointing one"); *Portland Marche, LLC v. Fannie Mae*, No. 21-cv-569, 2021 WL 2827476, 2021 U.S. Dist. LEXIS 126328, *5–6 (D. Or. July 7, 2021) ("Consent, while a factor that commands great weight, is not alone dispositive.").  This factor weighs in favor of appointing a receiver.

Having considered all of these factors, the Court finds that Plaintiff has demonstrated an immediate need for the appointment of a receiver.

### B. Appointed Receiver

In its original motion papers, Fannie Mae requested this Court appoint John Rothschild of G&E Real Estate Services, Inc. d/b/a Newmark as receiver. (Doc. 3-1 at 308.) On February 25, 2025, Fannie Mae revised its proposed nomination and proposed Michael Guggenheim instead. (Doc. 28.) Defendants have not specifically opposed either receiver if the Court were to grant the motion to appoint a receiver.

The Court has reviewed the qualifications of Fannie Mae's proposed receiver and finds Mr. Guggenheim qualified. Therefore, the Court appoints Mr. Guggenheim as receiver. An appropriate order will follow.

## IV. Conclusion

For the reasons above, Fannie Mae's Motion for Immediate Appointment of Receiver is GRANTED.

**IT IS SO ORDERED.**

Date:   February 28, 2025

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE