UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FANNIE MAE, | ) | CASE NO. 1:24-CV-1606 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| HATZ ONE LLC, *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

For the reasons stated in the Court's February 28, 2025 Order (Doc. 30) and Plaintiff's motion identifying Michael Guggenheim as a suitable receiver, it is ORDERED as follows:

1. **Appointment of Receiver.** Michael Guggenheim has the necessary qualifications to serve as the receiver. (*See* Doc. 28-3, Ex. C.) He is immediately appointed as Receiver over the Properties identified in the Complaint (Doc. 1 ¶ 36).

2. **Effective Date.** This Order and the injunction contained within will be in full force and effect as of the date it is entered by the Clerk of this Court. The appointment of the Receiver, and the powers and authority associated therewith, will become effective upon the filing of the Receiver's oath and bond required herein.

3. **Purpose of Receivership.** The purpose of this receivership is as follows:

    a. The Receiver will evaluate the condition and status of the Properties, to document all matters pertaining to its condition for the various parties in interest. In particular, the Receiver will develop an appropriate rehabilitation plan to bring the Properties back to a usable and marketable state, in a timely manner.

    b. The Receiver will take control of the Properties and will endeavor to maintain the Properties in a safe condition throughout the course of the receivership and the sale process.

    c. The Receiver may, after completion of the initial property evaluation, market

    the Properties for sale to a bona fide owner, subject to Plaintiff's consent.

    d. To the extent the marketing process is successful, the Receiver will negotiate and finalize the sale of the Properties to a purchaser(s), subject to Plaintiff's consent and upon approval of this Court.

  4. **Receivership Shall Not Impair Plaintiff's Rights.** Plaintiff's title to and security interest in the rents, issues, profits, and revenues of the property, and its right or ability to proceed with any foreclosure sale of the Property, shall not be impaired by the appointment of the Receiver, and Plaintiff may foreclose on the Property if otherwise authorized by this Court, notwithstanding the appointment of the Receiver.

  5. **Approval of Receivership Advances.** The Receiver's and Plaintiff's proposal for financing of receivership advances is approved as follows:

    a. The Receiver is authorized to apply for and obtain funding advances for necessary and appropriate receivership expenses from Plaintiff (each, a "Receivership Advance").

    b. Plaintiff is authorized, but not required under any circumstance, to approve some or all of any of Receiver's requests for Receivership Advances.

    c. Any Receivership Advance approved and advanced by Plaintiff and received by the Receiver shall be treated as an administrative expense of this case, without further order of this Court.

  6. **Powers of Receiver.** Without limiting the generality of the foregoing, the Receiver shall be vested with the general power and authority of receivers under applicable Ohio and federal law, including the authority and power described in O.R.C. § 2735.01, *et seq.*, over the following:

    a. **Custody and Control.** The Receiver will take exclusive custody and control of the Properties, including all improvements and amenities at the Properties. The Receiver may take all steps necessary to secure the Properties, including entering the Properties, changing locks, and taking such other action as may be necessary to establish control over the Properties, subject to the terms and conditions herein applicable to payment of Receivership Expenses (as further defined below).

b. **Protect and Preserve Properties.** Subject to the terms and conditions herein applicable to payment of Receivership Expenses (as defined herein), the Receiver may: i) retain a property management company (the "Property Manager") to manage the Properties under commercially reasonable terms, ii) take all emergency actions necessary in its judgment to preserve, protect and manage the Properties in order to preserve its value for the benefit of the lien holders; iii) pay all utilities, expenses or other obligations to suppliers or servicers in the ordinary course of business; and iv) use commercially reasonable means to maintain the Properties in compliance with all local building, housing, air pollution, sanitation, health, fire, zoning, or safety codes, ordinances, resolutions, and regulations.  The Receiver is authorized to enter into contracts for completion of such repairs.

c. **Study of Properties.** Subject to written approval of Plaintiff, the Receiver is authorized to take all actions required to determine the current condition of the Properties, including conducting studies of (i) the physical structure of the improvements at the Properties and whether they are sound for continuing habitation; (ii) the status of the mechanicals and trade components of the improvements on the Properties, including the elevators, HVAC, electrical, water, and plumbing, including the costs for repair or replacement of those items; and (iii) any other study of the viability of the Properties that the Receiver deems appropriate. Subject to written approval of Plaintiff, the Receiver is empowered to hire any professional that the Receiver deems in its reasonable business judgment to be appropriate to conduct these studies, and the Receiver may pay those professionals without further approval of the Court, provided that the Receiver's hiring of those professionals and budget for payment is within the bounds of the approved Budget. To the extent that the Receiver deems it appropriate, the Receiver may restrict sharing the results of the foregoing studies to Plaintiff, and to any other person or entity that the Receiver deems appropriate provided that a non-disclosure agreement is signed. The Receiver may also waive the confidentiality of any report as it deems appropriate. If the Receiver seeks to maintain the confidentiality of any report, the Receiver may file the report with the Court under seal without obtaining any further order.

d. **Collection of Revenues.** Subject to the terms and conditions herein applicable to payment of Receivership Expenses and Plaintiffs rights under Plaintiff's Loan Documents, the Receiver will collect the profits, rents, revenues, and all other income of any nature whatsoever from the Properties (collectively, the "Revenues"), and pay from the Revenues all Receivership Expenses (as defined below). Subject to Plaintiff's rights under Plaintiff's Loan Documents, the Receiver has the authority to receive and endorse as necessary, present for payment and/or collect any check, money order, credit card account or other form of payment payable as rent or other proceeds in relation to the Properties. Borrower, having earned their revenue from the

    Properties, must immediately turn over to the Receiver all bank account information and pay to the Receiver all amounts in the bank accounts under Borrower's name related to the Properties or derived from the Properties, as well as any amount in accounts under the control of any property manager. Subject to Plaintiff's rights under Plaintiff's Loan Documents, the Receiver has the power and authority to issue demands for the freezing and turnover of funds upon any financial institution which the Receiver has determined in its reasonable judgment is a depository of funds belonging to, or arising from, the Properties, whether or not those accounts are titled in the name of Borrower. All financial institutions are directed to deliver the deposits to the Receiver and the records as the Receiver may reasonably request with respect to those accounts. The Receiver may indemnify the financial institution upon whom such demand is made, and is empowered to open or close any such accounts.

e. **Insurance Policies.** The Receiver, the Property Manager, Plaintiff's conservator, the Federal Housing Finance Agency ("FHFA"), and Plaintiff shall each be named as an additional insured or as mortgagee, as their interest may appear on all existing coverages, including property damage, and general liability policies for the Property (collectively referred to as "Insurance on Property"). The premiums for insurance policies and deductibles for Insurance on Property that become due shall be expenses of the Receivership Estate. The Receiver shall have the right to possess and control all right, title, and interest of Borrower or the insured in and to all proceeds from any claims made or to be made under any insurance policy maintained by Borrower, the Receiver, or any other party with respect to the Property of the Receivership estate. Except as restricted by this paragraph below, the Receiver shall have the right to modify, amend, or replace any Insurance on the Property or obtain additional insurance as the Receiver deems reasonably necessary to protect the Property. No existing insurer may cancel its existing policy as a result of the appointment of the Receiver r without consent from the Plaintiff and/or FHFA. The Borrower may not amend, modify, or cancel any existing insurance policy without the written consent of the Receiver, Plaintiff and/or FHFA. Furthermore, the Receiver is required to obtain written consent from the Plaintiff prior to any such amendment, modification or cancellation of any existing insurance policy.

f. **Insurance Claims.** The Receiver will assume Borrower's rights and obligations with respect to any insurance claim on the Properties that is pending or to be made, and Borrower and its agents, including the insurance companies, shall cooperate with the Receiver in all aspects of having the Receiver take control of those claims. The Receiver shall further have the exclusive right to enter into and negotiate contracts with vendors related to the repair or remediation required in connection with any insurance claim. With Plaintiff's approval, the Receiver is authorized to terminate any pre-receivership contract related to or involving an insurance claim or insurance

proceeds. This paragraph shall not in any manner prejudice any of the rights and remedies of Plaintiff under any insurance policy on the Properties or under the Loan Documents. Plaintiff shall retain all rights and remedies as loss payee under any insurance policy on the Properties. Additionally, notwithstanding anything herein to the contrary, Plaintiff is expressly authorized to exercise all rights and remedies under the Loan Documents, including without limitation the right to adjust, settle and/or compromise any insurance claim and any insurance proceeds will be paid directly to Plaintiff and may be applied by Plaintiff in any order it determines, including to pay the obligations under the Loan Documents.

g. **Tenants and Leases.** The Receiver shall provide written notice of the Receiver's appointment to all tenants of the Properties within 10 days following the Effective Date.  The Receiver is authorized to modify or terminate existing leases, or other occupancy agreements, in the ordinary course of the business of the Properties, and pursue eviction or forcible entry and detainer actions against defaulted tenants to recover possession of any portion of the Properties.

h. **Termination of Pre-Receivership Contracts.**  Immediately upon notice to all interested parties, the Receiver is authorized to terminate any pre-receivership contract that relates to the Properties.

i. **Pre-Receivership Employees.**  The Receiver is authorized to retain, hire or discharge employees at the Properties, without any liability to the Receiver.

j. **Receivership Expenses**. The Revenue (including proceeds of any Receivership Advance) of the Properties, whether received by the Receiver or on deposit in any of Borrower's accounts, may be applied to approved expenses pursuant to a written budget to be submitted by the Receiver and approved by Plaintiff (the "Budget").  The Budget shall include payment of all anticipated expenses and obligations coming due after the date of the Receiver's appointment as may be necessary or appropriate for such maintenance, protection, preservation or operation of the Properties, or necessary expenses in carrying out the directions of this Order (collectively, the "Receivership Expenses"). Receivership Expenses include, without limitation, all taxes and assessments, insurance premiums for Properties; utility expenses; operating expenses; lease obligations; interest on loans, and compensation for the Receiver and any professionals.  Receiver shall provide an initial proposed budget to Plaintiff within 45 days after the Effective Date, and at least yearly after that.  Upon Plaintiff's approval of the Budget, the Receiver is authorized to make payments of Receivership Expenses, as set forth in the Budget.  The Receiver is authorized to pay necessary and appropriate Receivership Expenses until the first Budget is prepared and approved by Plaintiff.

k. **Expenditures Not Included In The Budget.** With regard to any repair or other expenditure in excess of $25,000 each month that is deemed necessary but not included in an approved Budget, the Receiver shall first notify Plaintiff within five days prior to incurring the expenditure and seek Plaintiff's consent to such expenditure prior to incurring or paying such expenditure.  If, however, the Receiver and Plaintiff cannot come to an agreement with respect to such expenditure, the Receiver shall file an application with the Court for authority to make such repair or incur such expenditure, together with acknowledgment of notice to Plaintiff of the time of hearing of said application.  Plaintiff shall have the right to object to said application and be heard on such objection.

l. **Revenue Not Used for Authorized Expenditures.**  Any funds coming into the hands of the Receiver (excepting any funds from the Receivership Advances), which are not used for expenditures authorized by an approved Budget, in payment of approved Receiver's fees or expenses, or authorized by the Court, may be remitted to Plaintiff for credit against the outstanding balance of the indebtedness to Plaintiff, accompanied by an accounting of all income collected from the Properties, and disbursements made by the Receiver (including any fees and disbursements paid to the Receiver or Receiver's counsel). Upon remitting funds to Plaintiff pursuant to this subparagraph, the Receiver shall file a Notice indicating the amount of funds remitted to the Plaintiff. Any funds received by Plaintiff from the Receiver pursuant to this paragraph shall be applied first to the costs and expenses of this action, then to any late charges and other applicable costs and fees, then to accrued but unpaid interest, and finally to principal and other amounts due under the Plaintiff's Loan Documents.

m. **Pre-receivership Liabilities.** The Receiver is not liable for any expenses or accounts related to the Properties which were incurred prior to the effective date of this Order. Notwithstanding the foregoing or anything that may be construed to the contrary, in the Receiver's discretion but subject to the approved Budget, the Receiver is authorized to (but is not obligated to) pay those expenses and accounts incurred prior to this Order (including, without limitation, tax, lease, mortgage, utility, and critical vendor obligations) to the extent that the payment of any such pre-existing expense or account payable is necessary or desirable for the preservation of the Properties.

n. **Bank Accounts.** The Receiver may establish one or more new bank accounts for the receivership estate at the Receiver's discretion. Such accounts may be in the name of the Receiver for the benefit of the receivership estate, or in the name of Borrower, in either case using Borrower's FEIN.  The Receiver will deposit all funds of the receivership estate into the receivership accounts and will make all payments and disbursements from the receivership estate from that account, and such funds shall not be commingled with other funds. Funds of the receivership are further authorized to be held in the trust account of any

    legal professional employed by the Receiver or in title company escrow.

o. **Sale of Assets.** The Receiver is authorized to market the Properties for sale (at such time that the Receiver deems appropriate) but will comply with all provisions of R.C. § 2735.04 for the sale of the Properties. Upon request, the Receiver will provide Plaintiff with access to all sales, marketing and offer information. The Receiver shall obtain written approval of Plaintiff prior to entering into any proposed listing agreement or proposed sale contract. If a proposed sale contract is approved by Plaintiff, the Receiver must apply to the Court pursuant to R.C. § 2735.04 for permission to proceed with a sale. The details of such proposed transaction shall be set forth in the application, and the application shall be served on all necessary parties, including Plaintiff. Plaintiff shall be permitted to file with the Court its objections to any such proposed sale and be heard on such objections. The Receiver is only authorized to seek approval of a receiver's sale pursuant to R.C. § 2735.04 if Plaintiff has not requested a sheriff's sale of the Properties.

p. **Employment of Professionals.** In addition to the Property Manager, the Receiver may choose and employ, upon notice and Court approval, such other professionals as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order, on the terms and conditions as the Receiver determines to be in the best interest of the receivership estate.

q. **Lawsuits and Settlements**. The Receiver is authorized to initiate, defend, negotiate, settle, or otherwise dispose of any claim or litigation that concerns the Property or Receivership estate subject to Plaintiff's approval to the extent such settlement shall affect Plaintiff's security interests in the Property and all related interests of Plaintiff.  The Receiver is further specifically authorized to pursue any claims or causes of action, on behalf of Borrower, that the Receiver determines in its reasonable judgment to be appropriate and necessary, including without limitation, claims for fraudulent transfer.  All fees and expenses related to any litigation initiated by the Receiver must be agreed upon in the Budget or otherwise approved by the Court.

r. **Tax Appeals**. The Receiver may initiate the appropriate proceedings or action to challenge the valuation of the Properties for purposes of taxation, or defend any action brought against the Receiver in such capacity. The Receiver is authorized to retain special counsel for such cases on a reasonable and market- rate contingency fee basis, subject to Plaintiff's written approval.

s. **Books.** The Receiver shall prepare and maintain complete books, records and financial reports of the income and expenses associated with this case, and all other reasonably appropriate and necessary records.

t. **Receivership Taxes and Tax Returns:** The Receiver is authorized and directed to pay all current, past due, and, as the same become due and payable during the receivership, future real estate taxes, personal property taxes and any other taxes and assessments against the Properties, so long as Revenues are sufficient to fund such payments. The Receiver is not required to prepare or file any tax returns related to the receivership estate and is not responsible for the preparation of any tax returns for Borrower. The Receiver shall provide copies of operating statements to Borrower, upon request and at Borrower's cost for the preparation of tax returns. All Receiver's costs related to furnishing information to Borrower for the completion of any tax returns are administrative expenses. The Receiver is permitted to retain funds necessary for tax services after the close of this case or prepay for those services as necessary.

u. **Other Actions.** The Receiver may undertake all other actions, including, without limitation, executing documents on behalf of the receivership estate that are in its judgment, necessary or appropriate to accomplish the directions of this Order. The Receiver is further authorized to undertake any express statutory powers accorded to a receiver under Ohio law, unless otherwise limited by this Order or subsequent order of this Court.

7. **Delivery to Receiver.** Any person or entity served with a copy of this Order, within five business days of demand by the Receiver (or as to Borrower, within five business days of the entry of this Order), are ordered to cooperate with the Receiver in the transition of the management of the Properties and shall deliver or make available to the Receiver possession and custody of the Properties including all of the following:

a. All keys, including master alarm codes, access devices, and access codes affording entry upon or access to the Properties, and a list of persons who to Borrower's knowledge possess any of the foregoing which are not turned over to the Receiver;

b. Any tenant ledgers/leases, including all amendments and renewals, pending or otherwise, together with communication/correspondence files and lease abstracts/summaries (if any), and tenant contact names and telephone numbers;

c. All deposit accounts, including the petty cash fund, if any, into which deposits have been made and are currently being held, whether in the name of Borrower or in any other name for the benefit of the Borrower, and account statements for the past year;

d. All security deposits, security deposit accounts, if any, and an accounting of all security deposits;

e. A current aged account receivables or delinquency report and detailed rent roll;

f. An aged listing of all trade payables and other payables;

g. A copy of any records relating to operating expenses for the Properties;

h. A list of utilities, copies of utility bills for the larger of the last six months or the period of time for which there is a pending balance, and all utility account numbers;

i. Year-end 2020 through 2023 operating statement as well as a year-to-date 2024 operating statement and budgets for each of these years;

j. All payroll records and employee files and applications pertaining to on-site employees of the Properties;

k. An inventory of all equipment, furniture, vehicles and related titles, and supplies for the Properties;

l. All existing service contracts, and a list of, and any and all documents pertaining to, any unpaid vendor or service provider invoices or record of work performed by any such vendors, including but not limited to copies of any and all mechanics' liens relating to the Properties;

m. All pending bids for contractor work, if any;

n. All existing insurance policies for the Properties, the assets of the Receivership estate, or maintained by Defendants for or with respect to the Property, including contact information for the insurance agencies, brokers, and adjusters;

o. All tenant and vendor insurance certificates and loss runs and claims submitted in the past three (3) years, if any;

p. Site plans, surveys, specifications, floor plans, drawings, measurements, etc., easements, access agreements, parking agreements, maintenance agreements, and other documents concerning access, use, or maintenance of the Properties;

q. Documents identifying or summarizing all pending litigation (excluding this action), pending administrative hearings, insurance claims, and tax appeals, as well as any documents pertaining to any violations of any applicable building or health and life safety codes and regulations;

    r. All records and reports relating to the condition of the Properties, any environmental studies and reports, all records required to be kept under applicable safety and environmental laws, and documents and information pertaining to any violations of any applicable building or health and life safety codes and regulations;

    s. All documents, books, records and computer files, computer equipment, software, management files, equipment, furniture, supplies used at and associated with the Properties and all passwords needed to access such software and computer files;

    t. Email records maintained for the Properties (and all off-site financial records of Borrower or any property manager related to the Properties) including, but not limited to, all records of Borrower or any property manager concerning the Income, and the operation and management of the Properties;

    u. All building plans, technical manuals for all systems, machinery or equipment on or a part of the Properties together with operating procedures and current warranties in existence with respect to the Properties;

    v. The names, addresses, telephone numbers and e-mail addresses for the key representatives of Borrower, its property manager(s), managers, members, agents (including, but not limited to, all management companies engaged by Borrower), and all of its respective employees in possession or control of any portion of the Properties;

    w. Information and passwords for all website and email hosting, domain name registration, social media, digital advertising, and other internet accounts related to the Properties; and

    x. Such other records pertaining to the management of the Properties as may be reasonably requested by the Receiver.

8. **Postal Service.** The Receiver shall be immediately vested with the power to issue demands in the name of Borrower upon the U.S. Postal Service, or any other public or private entity, to gain exclusive possession and control of postal boxes as may have been used by Borrower for the receipt of rents or profits generated from, or other mail related to, the Properties.

9. **Cooperation.** All persons or entities served with a copy of this Order must

cooperate fully with the Receiver in the performance of its duties. This cooperation includes but is not limited to, providing any non-privileged information to the Receiver that the Receiver deems necessary to exercising the authority and discharging the responsibilities of the Receiver.

10. **Plaintiff's Rights.** Nothing in this Order is intended to interfere with, or adversely affect, any trustee's sale or other exercise of Plaintiff's or FHFA's rights, nor is the Order intended to constitute a waiver of, or election not to proceed with, any judicial foreclosure sale.

11. **Oath and Bond.** The Receiver will file with the Clerk of this Court a receiver's oath and post a bond in the amount of $10,000.00 to ensure the full and faithful performance of its obligations herein. The cost of the Receiver's Bond and any renewals or extensions shall not be an expense of the Receivership estate paid from Property funds.

12. **Receiver's Insurance.** Separate from Insurance on Property (as defined herein), the Receiver shall, at its sole cost and expense, obtain and carry in full force and effect for Receiver and any of his employees insurance coverages for (A) professional liability/errors and omissions and, (B) fidelity/crime. Such professional liability/errors and omissions coverage will have a minimum per claim coverage amount of $5 million and fidelity/crime coverage will have a minimum per claim coverage amount equal to the greater of $1 million per claim or four months of revenue using the agreed budget for the property (collectively these coverages are referred to as "Receiver's Business Insurance"). In addition, the Property Manager shall carry the following insurance coverages: (A) excess/umbrella coverage in the minimum amount of $5 million per claim above primary policy limits or a greater amount as required by Plaintiff; (B) dishonesty, identity theft, fidelity, cyber (first party and third-party including identity theft resolution and loss control services), general liability coverage (separate from the Insurance on Property as

defined herein), business automobile liability, and employer's liability, with each such coverage having a minimum coverage amount of $1 million per occurrence and $2 million in the aggregate; and (C) worker's compensation with a minimum per claim coverage amount in accordance with state laws. All such coverages for the Property Manager are collectively referred to as "Property Management Insurance." The Receiver shall be added as an "additional named insured" to Property Management Insurance upon hiring or retention of the Property Manager. To the extent the Receiver engages agents, attorneys, or contractors to provide services, those entities must also have appropriate coverages in the same amounts as the required Property Management Insurance. Fannie Mae and FHFA shall be named as additional insureds on the Receiver's Business Insurance and the Property Management Insurance. For the avoidance of doubt, the Receiver, the Property Manager and their employees, as well as any of their agents, attorneys or contractors shall always keep in force the minimum amounts of coverage as set forth in this paragraph for Receiver's Insurance and Property Management Insurance, including applicable tail coverage. Each insurance carrier providing Receiver's Business Insurance and Property Management Insurance, whether admitted or non-admitted, must comply with a minimum (A) A. M. Best Financial Strength Rating of A- and (B) A.M. Best Financial Size Category of VII or better. The maximum deductible or self-insured retention or any combination thereof for each coverage shall be no more than $25,000. The premiums for insurance policies and deductibles for all Receiver Business Insurance and Property Management Insurance shall not be expenses of the Receivership estate. The Receiver and the Property Manager will, upon appointment, provide certificates to Fannie Mae evidencing insurance coverages, and thereafter, upon Fannie Mae's request. The Receiver and the Property Manager will promptly notify Fannie Mae of any material change in insurance coverages.

13. **Limitation of Liability.** Any liability incurred by, or recourse against, the Receiver other than for gross negligence, willful misconduct, malfeasance, bad faith, reckless disregard of duties, or actions in violation of orders of this Court, will be limited in order of priority first to applicable insurance coverages inuring to the Property and to the Receiver (including its employees, agents, attorneys, other professionals or contractors), second to the Receiver Bond, and third to the Property funds generated by the Property and received by the Receiver in the course of the Receivership. Any claims or actions asserting liability against the Receiver, the Receiver's agents, employees, other professionals, or contractors of Receiver must be brought by motion in this action.  For the avoidance of doubt, the Receiver, and the agents, employees, attorneys, and contractors of Receiver will have personal liability for gross negligence, willful misconduct, malfeasance, bad faith, reckless disregard of duties, and actions in violation of this Court's orders.

14. **Receiver's Rights Subject to HERA.** The Receiver is vested with all the powers and responsibilities of a receiver as provided in this Order, subject to the rights, titles, powers, privileges, and functions of FHFA and Plaintiff under the Housing and Economic Recovery Act of 2008 ("HERA").  FHFA retains all its federal powers and functions including the right to assert such powers and protections to preclude the Receiver and the receivership from restraining or affecting the Conservator powers or functions as to Plaintiff's and FHFA's interests at issue herein. Notwithstanding any other term of this Order, Plaintiff and FHFA, as Conservator of Fannie Mae, retain and may exercise without further Court approval any and all of their rights under the Loan Documents and HERA. The Receiver's powers as set forth in this Order do not in any way diminish Plaintiff's rights under the Loan Documents or FHFA's rights, titles, powers, functions, and protections as Plaintiff's Conservator and successor under HERA.

15. **Stay and Injunction.** Subject to Plaintiff's rights under its Loan Documents and/or under applicable law, except for where there is leave of the Court, during the pendency of the receivership ordered herein, the landowner, all creditors of the landowner, parties in interest, bodies politic, sheriffs, marshals, and other officers, and their respective attorneys, servants, agents, and employees, and all other persons, firms, and corporations are enjoined and stayed from taking any action to establish or enforce any claim, right or interest related to the Properties or against the Receiver, receivership assets, the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

   a. Commencing, prosecuting, litigating or enforcing any suit against Borrower, the Receiver or otherwise related to the Properties, except that actions may be filed to toll any applicable statute of limitations;

   b. Obtaining, enforcing, or perfecting any lien upon, imposing any charge or assessment, taking or attempting to take possession of, or retaining possession of, the Properties, its improvements and appurtenant assets, or attempting to foreclose, forfeit, alter or terminate any of the Receiver's interests in property, whether such acts are part of a judicial proceeding or otherwise;

   c. Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of the Receiver, or any agent of the Receiver;

   d. Terminating any existing service, as a means of attempting to collect an obligation of Borrower or on account of an obligation of Borrower, provided that this subparagraph shall have no application to claims or amounts payable to utility providers governed by the Public Utilities Commission of Ohio ("PUCO");

   e. Doing any act or thing to interfere with the Receiver taking control, possession or management of the property subject to the receivership, or to in any way interfere with the Receiver or its duties, or to interfere with the exclusive jurisdiction of this Court over the Properties.

16. **Receiver's Inventory and Reports.** Unless this Court orders otherwise, the

Receiver shall file, as soon as practicable but not later than 60 days after the Effective Date, an inventory as required under Local Rule 66.1 (the "Inventory Report"). No later than 90 days from the Effective Date or within one month of filing the initial Inventory Report, the Receiver shall file with the Clerk a report of receipts and distributions, and a similar report shall be filed every month thereafter, as required by Local Rule 66.1, unless otherwise ordered by the Court. The Receiver shall also file a final report within 30 days from the time at which his appointment is terminated. Any objection or exception to any of the Receiver's reports or inventory shall be filed within 21 days after the report or inventory is filed.

17. **Compensation.** The Receiver will be compensated on a flat monthly rate of $8,000 per month, subject to Court approval. Any lawyer or law firm employed by the Receiver shall be compensated at their normal hourly rates, subject to Court approval.

18. **Fee Applications.** Prior to payment of any fees to the Receiver or its counsel, the Receiver must file a written request for the payment of compensation of the Receiver or counsel. The requests for compensation will itemize the time and nature of services rendered by the Receiver and counsel in increments of no greater than one-tenth of an hour. The Receiver and his counsel shall not receive any compensation unless and until approved by this Court.

19. **Instructions from Court.** The terms of this Order are meant to balance the competing interest of multiple parties as they relate to the receivership proceedings. To the extent that the Receiver and any interested party are unable without Court intervention to resolve a dispute as to any term of this Order or action of the Receiver, nothing in this Order prevents the Receiver from seeking instructions from the Court as to how to proceed.

20. **Termination of the Receivership.** Upon the filing of any notice by Plaintiff that the Properties has transferred by judicial foreclosure or by means of a deed in lieu of foreclosure,

the receivership shall terminate without further order of the Court, and Plaintiff or the Receiver may request discharge of the Receiver following the filing of a Final Report and the payment of all administrative expenses of the receivership estate that have priority over Plaintiff's claims. Plaintiff may move the Court to terminate the receivership at any time.

21. **Jurisdiction.** The Court will retain jurisdiction over the Properties and its condition through the termination of the receivership and the termination of this matter. Any purchaser of the Properties will remain subject to this Court's jurisdiction as to any warranties or representations made during the sale process.

22. **Service of Order.** The Receiver will serve a copy of this Order upon all interested parties in this case at the time the Receiver files its undertaking and posts its bond.

**IT IS SO ORDERED.**

Date: February 28, 2025

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE