IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FANNIE MAE, | ) | CASE NO. 1:24-CV-1606 |
| | ) | |
| Plaintiff, | ) | JUDGE: BRIDGET MEEHAN BRENNAN |
| | ) | Magistrate Judge: Johnathan Greenburg |
| v. | ) | |
| | ) | **MOTION TO INTERVENE** |
| HATZ ONE, LLC, *et. al.* | ) | **BY NON-PARTY, CITY OF** |
| | ) | **CLEVELAND, OHIO** |
| Defendants. | ) | |

*NOW COMES* Intervenor, City of Cleveland, Ohio ("City"), by and through counsel undersigned and respectfully Moves this Honorable Court to allow the City to Intervene in the above-captioned case to adequately assert its interests pursuant to Federal Rule of Civil Procedure 24(a)(2). The City, a municipal subdivision of the State of Ohio, is empowered by Ohio's Constitution Article XVIII, Section 3, Ohio's Revised Code, and corresponding local ordinances to enforce statutes, ordinances, rules and regulations related to public health, safety, and welfare within its jurisdiction ("Applicable Law"). Certain residential properties within the City's jurisdiction are subject to both the jurisdiction of this Court and subject to Applicable Law.

1

For these reasons and the reasons contained in the attached Supporting Brief, the City's Motion should be granted. A Copy of the City's Complaint is attached hereto as required.

                Respectfully Submitted,

*/s/ Zachariah S. Germaniuk*
**DAVID M. DOUGLASS (0015312)**
**ZACHARIAH S. GERMANIUK (0090109)**
**MICHAEL E. REARDON (0062389)**
**SEAN F. BERNEY (0058608)**
**DOUGLASS & ASSOCIATES CO., L.P.A.**
4725 Grayton Road, Cleveland, Ohio 44135
(216) 362-7777 or 216-362-4140
Fax No: (216) 362-4160
E-Mail: d.douglass@douglasslaw.com
z.germaniuk@douglasslaw.com
m.reardon@douglasslaw.com
s.berney@douglasslaw.com
*Attorneys for Intervenor, City of Cleveland*

CERTIFICATE OF SERVICE

I, undersigned, hereby certify that on January 12, 2026 a true and accurate copy of the foregoing was filed with the Clerk of the United States Northern District and served on all parties and counsel of record for parties using the Court's CM/ECF system.

| | | |
|---|---|---|
| Brendan L. Heil, Esq. | & | Mitchell I. Cohen, Esq. |
| Matthew D. Gurbach, Esq. | | WEYLS, PETERS & CHUPARKOFF, LLC |
| Justin W. Ristau, Esq. | | 6505 Rockside Road, Suite 105 |
| BRICKER GRAYDON WYATT, LLP | | Independence, Ohio 44131 |
| 1100 Superior Avenue, Suite 1600 | | Ph: (216) 503-9560 |
| Cleveland, Ohio 44114 | | Fax: (216) 503-4667 |
| Ph: (216) 523-5405 | | mc@w-pllc.com |
| Fax: (216) 523-7072 | | *Attorneys for Receiver,* |
| Bheil@brickergraydon.com | | MICHAEL GUGGENHEIM |
| Mgurbach@brickergraydon.com | | |
| Jristau@bricker.com | | |
| *Attorneys for Plaintiff FANNIE MAE* | | |

Joyce Kuhns, Esq.

OFFIT KURMAN

1954 Greenspring Drive, Suite 605

Timonium, Maryland 21093

Ph: (410) 209-6463

Fax: (410) 209-6463

jkuhns@offitkurman.com

*Attorney for Defendants HATZ ONE, LLC;*

*HATZ TWO, LLC; CLEVELAND 2, LLC;*

*CLEVELAND 3, LLC; & LEIB STEINER;*

Respectfully Submitted,

*/s/ Zachariah S. Germaniuk*
**DAVID M. DOUGLASS (0015312)**
**ZACHARIAH S. GERMANIUK (0090109)**
**DOUGLASS & ASSOCIATES CO., L.P.A.**
*Attorneys for Intervenor, City of Cleveland*

**SUPPORTING BRIEF**

I. INTRODUCTION

The City of Cleveland, Ohio ("City") seeks to Intervene pursuant to Federal Rule of Civil Procedure 24(A)(2) in order to assert its general police power and related interests to enforce Ohio's Revised Code, and corresponding local ordinances to enforce statutes, ordinances, rules and regulations related to public health, safety, and welfare within its jurisdiction ("Applicable Law") related to certain residential real properties, already identified in these proceedings and generally known as: 2636 North Moreland Blvd., Cleveland, Ohio 44120; PPN: 144-13-007, 2635 North Moreland Blvd., Cleveland, Ohio 44120; PPN: 144-13-012, 2653 North Moreland Blvd., Cleveland, Ohio 44120; PPN: 144-13-014, 2642 North Moreland Blvd., Cleveland, Ohio 44120; PPN: 144-13-006, 2822 South Moreland Blvd., Cleveland, Ohio 44120; PPN: 144-10-008, 2825 South Moreland Blvd., Cleveland, Ohio 44120; PPN: 144-10-011, 2843 South Moreland Blvd., Cleveland, Ohio 44120; PPN: 144-10-012, 2880 South Moreland Blvd., Cleveland, Ohio 44120; PPN: 144-10-001, 144-10-002, 144-10-003, 2870 South Moreland Blvd., Cleveland, Ohio 44120; PPN: 144-10-004, 2621 North Moreland Blvd., Cleveland, Ohio 44120; PPN: 144-13-011, 2630 North Moreland Blvd., Cleveland, Ohio 44120; PPN: 144-13-008; 2622 North Moreland Blvd., Cleveland, Ohio 44120; PPN: 144-13-010, 2805 Ludlow Road, Cleveland, Ohio 44120; PPN: 144-09-013, 2851 Hampton Road, Cleveland, Ohio 44120; PPN: 144-10-013 ("Properties"). The Properties continue to exist in a state of non-compliance with Applicable Law, despite current parties' in the above-captioned case ("Action") having been properly noticed and having full awareness of the deteriorating conditions at the Properties. As the Properties are subject to a Receiver and corresponding Order of this Court issued February

28th, 2025 ("Receivership Order") the City respectfully Moves to Intervene in order to properly assert its interests to ensure that the Properties in this Action are maintained in compliance with this Court's Receivership Order.

II. Factual Background

A. Property Conditions & Appointment of Receiver (Feb. 28th, 2025)

The relevant facts for the City's Motion concern the conditions of the Properties which required a Receiver's appointment; the conditions of the Properties since that time; the City's ability to enforce Applicable Law; and the impending auction of the Plaintiff's Judgment Interest, originally scheduled for on or about December 15th and currently re-scheduled for on or about January 21st, 2026.

The existence of numerous code violations is already well-known to the Court and was noted in the Preliminary Judicial Report filed on September 19, 2024, item numbers 31, 32, 33, 34, 35, and 42. Doc. 2-1. In fact, as of the date of the City's Motion approximately *three hundred forty-six* (346) open and uncorrected violations of Applicable law are present at the Properties, the vast majority of which accrued during the Defendant's operation of the Properties under the control of co-Defendant Mendel Steiner, now deceased.

In large part due to these serious hazards to public health, welfare, and safety, on February 28th, 2025 this Court granted Plaintiff, Fannie Mae's, Motion for Immediate Appointment of Receiver. *See generally* Doc 30 & 31. In appointing Michael Guggenheim as Receiver for the Properties, the Court found that:

> The evidence submitted by Fannie Mae reveals significant and ongoing damage to the properties due to mismanagement. Inspections of just part of the

properties have revealed water damage, mold, broken pipes, missing drywall, broken elevators, rampant trash, and the collection of unsanitary waste, among other issues requiring immediate repair. (Doc. 23-2). Doc. 30-8.

Moreover and of relevance to the present Motion, the Court accepted Plaintiff's proposal that a "receiver can *immediately* address any continuing issues relating to life, health, and safety. *Then* a receiver could address other issues to make the properties rentable again, including an on-site property manager." Doc. 30-9, 10 (emph. added).

> Thereafter, in its full Receivership Order, the Court authorized the Receiver to take:
>
> …such other action as may be necessary to establish control over the Properties…and iv) use commercially reasonable means to *maintain the Properties in compliance* with all local building, housing, air pollution, sanitation, health, fire, zoning, or safety codes, ordinances, resolutions, and regulations. Doc. 31-2, 3 (emph. added).

The Receivership Order also placed a sweeping stay that operates to broadly enjoin every class of persons, including "bodies politic", which would necessarily include the State of Ohio and every political subdivision thereof, including the City, from "taking *any* action to establish or enforce *any* claim, right, or interest related to the Properties…or to interfere with the *exclusive* jurisdiction of this Court over the Properties." Doc. 31-14 (emph. added). However, as noted by the Receiver's filed reports, dialogue with the City relative to correcting these violations in furtherance of maintaining the properties in compliance with Applicable Law has been on-going.

7

B. Receiver's Activities (Mar. – Oct. 2025)

The Receiver's First Report, filed April 28th, 2025 ("First Report"), indicated in its Supporting Memorandum that that out of approximately 308 apartments current tenant occupancy was twenty percent (20%)" Doc 37-2. Moreover, the First Report indicated that they took "immediate steps to protect and preserve the Properties" Id. The First Report also acknowledged that property management and counsel had been retained to "handle" among other things "building violations". Doc 37-7. The Receiver's Second Report, filed July 11th, 2025 ("Second Report"), indicated in its Supporting Memorandum that the "Receiver and Property Manager have proactively taken necessary steps to (i) assess the physical condition of all Properties including addressing life-safety conditions, repairs and ongoing maintenance of the Properties". Doc 46-2. In its operations summary, the Second Report indicates that "Life-Safety Repairs" were in progress and were estimated to be complete by August 1st, 2025. Doc. 46-7. The Second Report's Summary and Recommendations indicated that "safety repairs and property security" would be prioritized but acknowledged that "The [Properties are] in an early stabilization phase." Doc 46-8.

The Receiver's Third Report, filed September 29th, 2025 ("Third Report"), indicated in its Supporting Memorandum among other things that "Since the filing of the [Second Report] the Receiver has continued to address priority matters affecting the Properties including (i) finalizing all life-safety conditions, building security, property repairs and ongoing maintenance" Doc. 57-2. The Third Report revised the estimated timeline to completion of "Life-Safety Repairs" to a mere two days after the filing of the Third Report, or *October 1st, 2025*. Doc 57-7. (emph. added). The Third Report's Summary and Recommendations indicates that only two of the

8

fifteen properties subject to Receivership were actually occupied; "The Larchmere" [2621 N. Moreland Blvd, Cleveland, Ohio 44120] and "Woodlands" [14101 S. Woodland Blvd., Shaker Hts., Ohio 44120 – outside the City's jurisdiction] and moreover that occupancy was only approximately 10% [i.e. 89.57% vacant]. Id.

C. CITY COMMUNICATION & CODE COMPLIANCE ACTIONS (JAN. 2025 – PRESENT)

Throughout the relevant timeline indicated *supra*, the City has attempted to maintain an open line of communication with both the Plaintiff and Receiver relative to the status of conditions falling below the standard set by Applicable Law. Beginning on March 10th, 2025, the City forwarded copies of some of the most urgent and existing code violations at the Properties which had remained open and uncorrected prior to the Receivership Order. On or about April 14th, 2025 the City contacted Plaintiff and Receiver and requested a meeting to discuss the status of code violations and a proposed abatement plan that the City could monitor. However, as of July 21st, 2025 no formal abatement plan had been presented to the City. The communication with the City having waned during the spring and summer of 2025, on September 18th, 2025 the Mayor of the City of Cleveland wrote directly to Ms. Sandra Thompson, President of Fannie Mae, expressing concern regarding the possible foreclosure of the Properties in their current conditions of non-compliance with Applicable Law. Thereafter, and as the Plaintiff filed its motion to seek a foreclosure, the City continued to express its concern that the Properties' conditions posed a risk to public health, safety, and welfare and that the City's interest in enforcing Applicable Law was separate from the interests of Plaintiff. These expressions of concern reached their apex in early December, and on December 2nd, 2025 the City made an urgent request for immediate discussions to attempt to reconcile the interests of the Plaintiff and

City.  With no response forthcoming, on December 4th, 2025 the City filed a Complaint for Injunctive Relief in the Cuyahoga County Court of Common Pleas against the titled owners of the Properties seeking a Court Order requiring the Properties be brought into and maintained in full compliance with Applicable Law.

D. PARTIAL SUMMARY JUDGMENT & AUCTION OF JUDGMENT INTEREST (NOV. 2025 – PRESENT)

While the dialogue between the City and Plaintiff was on-going, on November 10th, 2025, the Plaintiff filed a Motion for Partial Summary Judgment, seeking the remedy of foreclosure ("Motion to Foreclose"). Doc. 59. In granting Plaintiff's Motion to Foreclose on December 8th, 2025 ("Entry"), the Court stated that 'Fannie Mae is DIRECTED to General Order No. 2006-16-6 ("General Order") to comply with the Court's procedures for foreclosure sales." Doc. 66-7. (emph. in original). However, the auction contemplated by the Plaintiff was not based upon a motion for sale or within the scope of the Court's General Order, but rather an auction of the Plaintiff's interest, i.e. an auction to the highest bidder of who would obtain the Plaintiff's *right* to foreclose upon the Properties. Upon recognition of this, and the nature of the auction materials fundamentally obfuscating the actual condition of the Properties -including by requiring bidders to sign a non-disclosure agreement in order to view the true extent of code violations and non-compliance with Applicable Law, the City finds its interest wholly inadequately represented by existing parties and brings the instant Motion before the Court.

III. LAW AND ARGUMENT

The City of Cleveland must be permitted to Intervene in this Action to adequately protect the public interest and to enforce Applicable Law. Federal Courts have long recognized that a State and its political subdivisions have a fundamental Constitutional interest in enforcing laws

and ordinances regarding local codes affecting building, housing, zoning, health, fire, and safety. *See generally* Thomas Cusack Co. v. City of Chicago, 242 U.S. 526, 530–31 (1917); Vill. of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 387 (1926) [holding that ordinances, statutes, and all similar laws that may be used to affect building and housing are valid where their justification is found "in some aspect of the police power, asserted for the public welfare"]; and Miller v. Bd. of Pub. Works of City of Los Angeles, 234 P. 381, 383 (1925) [holding [t]he right of the city to enact ordinances governing the erection, use, maintenance, occupancy and condemnation of privately owned structures stems from its inherent police power" is "'an indispensable prerogative of sovereignty and one that is not to be lightly limited.'"]. Pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, a "'court must permit anyone to intervene' who, (1) '[o]n timely motion,' (2) 'claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest,' (3) 'unless existing parties adequately represent that interest.'" Fed. R. Civ. Pro 24(a)(2). As outlined below, all relevant elements favoring Intervention are met and as such the Motion should be granted without delay.

*1. The City's Motion to Intervene is Timely Under Existing Federal Precedent*

Whether a Motion to Intervene is considered timely is conditional, fact-specific, and not fixed to an arbitrary timeline, as is the case with pleadings. United States v. City of Detroit, 712 F.3d 925, 930 (6th Cir.2013). Federal Courts consider five factors to determine generally whether a movant's action is timely: "(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his or her interest in

11

the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his or her interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention." Id. at 930–31. However, none of these single factors are dispositive and a timeliness determination is to be made upon consideration of all the circumstances. Id. at 937 (Clay, J. in agreement with outcome but dissenting in analysis) (*citing* Stotts v. Memphis Fire Dep't, 679 F.2d 579, 582 (6th Cir. 1982); S.H. v. Stickrath, 251 F.R.D. 293, 297 (S.D. Ohio 2008)); *See also* Cameron v. EMW Women's Surgical Ctr., P.S.C., 595 U.S. 267, 279 (2022) (holding that grounds to intervene became apparent only after obtaining additional information that the non-party's interests would not be protected because another party intended to abandon the resolution of their shared interest). A motion is therefore "timely" when it is made 'as soon as it [becomes] clear' that the moving party's interests 'would no longer be protected.' *See* Cameron, 595 U.S. at 279. This is true even in situations where remedial measures have already been implemented by the Court but such measures are not adequately protecting the movant's interests. Grubbs v. Norris, 870 F.2d 343, 346 (1989).

      With regards to the first factor considered in assessing timeliness, the docket of these proceedings contemplates a discovery timeline extending well into the spring of 2026, with dispositive motions due no later than July 21st, 2026. Doc. 55-2. Within that general timeline, the City further observes that partial summary judgment allowing the Plaintiff to foreclose upon its mortgage note was only granted December 8th, 2025. Given the closeness in time of communications between the City and Plaintiff, as well as the nature of the auction discussed in Section II.C-D, respectively, and the instant Motion, It is only within the last few weeks that it

"became clear" to the City that its interests would not be adequately protected by any of the existing parties to the action. This recognition comes despite the remedial measure imposed by the Court in appointing a Receiver with a mandate to maintain the Properties in compliance with all local building, housing, air pollution, sanitation, health, fire, zoning, or safety codes, ordinances, resolutions, and regulations.

With regard to the second factor considered in assessing timeliness, the purpose of the City's Intervention is to assert its Constitutionally-protected interest in enforcing applicable state laws and local ordinances related to "the preservation of the public peace and general welfare, safety, morals and health," including the resulting restrictions that regulate the habitability of buildings in which municipal residents reside. State ex rel. Schulman v. City of Cleveland, 220 N.E.2d 386, 393 (Ohio Com. Pl. 1966). As discussed *supra*, the City has fundamental interests in exercising general police power, including over real property within its jurisdiction. Id. at 393 (*citing* Miller at 383 (1925)). The City as a matter of law cannot cede its fundamental interest in seeking compliance with Applicable Law in the scenario outlined to the Court by the facts of this case.

Regarding the third and fourth factors considered in assessing timeliness and as discussed in Section II.C, *supra,* the City has attempted numerous times to communicate its interests and indeed has given reasonable deference to allow the Receiver time to begin to address the numerous, serious, and substantial code violations which have accumulated and continue to exist at the Properties. However, despite that deference, the City can not ignore that emergency reports have been received from residents indicating no heat on days with temperatures consistently below freezing, and moreover that 346 code violations remain un-corrected.  In this case, a

Receiver was given full Custody and Control of the Properties on February 28, 2025. Doc. 31-1. One of the receiver's duties within the scope of its authority included a mandate to "develop an appropriate rehabilitation plan to bring the Properties back to a usable and marketable state in a timely manner" and, as already discussed *supra*, to maintain the Properties in compliance with all local building, housing, air pollution, sanitation, health, fire, zoning, or safety codes, ordinances, resolutions, and regulations. Doc. 31-1, 3. Nine months after appointment, no rehabilitation plan has been submitted to the City, despite the City's reasonable and repeated requests, and no significant effort has been made to address the 346 Building & Housing Code Violations issued by the City of Cleveland.

Supporting this is the plain observation that, although the First Report indicates a prioritization of "Life-Safety Repairs" and that "counsel" had been retained to "handle…building violations" that Report is silent as to whether any general contractors, subcontractors, architects, or engineers were retained beyond cleanouts of individual units, what permits had been pulled for health and safety repairs requiring such permits under code, whether any estimates for priority health and safety repairs had been obtained, and what specific building violations would be "handled" first. Doc. 37-7. In similar fashion across the Receiver's Second and Third Reports, there is no indication of or supporting documentation to confirm what scope(s) of work have been undertaken, and which specific "Life-Safety Repairs" were actually completed to elicit confidence that repairs were on track to be complete by October 1st, 2025. Indeed, the initial Property Condition Assessment Plaintiff commissioned in February 2025 contains far more detail on the actual property conditions than the Receiver's reports.

Given that the Receiver involved in this case has been Ordered as of February 28th, 2025 to maintain the Properties in compliance with all local building, housing, air pollution, sanitation, health, fire, zoning, or safety codes, ordinances, resolutions, and regulations, the City intervening to protect its interest in the same should not prejudice any Party, since the existing parties have reasonably known or should have known that such interests were already to be protected and within the scope of the prior orders of this Court.

Finally, the Plaintiff's proposed auction of its interest without fully or accurately disclosing the conditions of the Properties, which is not contemplated by this Court's Order Granting partial summary judgment in favor of foreclosure, presents a clearly unusual circumstance militating in favor of granting the City's Intervention. As the Order granting partial summary judgment made clear, "Fannie Mae is DIRECTED to General Order No. 2006-16-6 to comply with the Court's procedures for foreclosure sales." Doc. 66-7.  The City finds it curious that Plaintiff's proposed auction makes no mention of the General Order referenced above, or that any leave of Court was requested to have such auction conducted by a private sales officer, as allowed by existing Ohio law in Ohio Rev. Code § 2329.152, or without any serious appraisal of the properties.

As the Court's General Order 2006-16-6 makes clear:

> "**3.2** Upon approval of the motion for the sale, the Judicial Officer shall appoint a master commissioner from the Court's approved panel to conduct the sale.
>
> **3.3** The master commissioner shall order an appraisal of the subject property by three State of Ohio licensed or certified appraisers pursuant to OHIO REV. CODE § 2329.17." U.S. Dist. Ct. for the N.D. Ohio, General Order No. 2006-16-6 (June 16, 2006).

15

Instead, the printed and electronic auction advertisements indicates without any corroboration values of $60,000 per unit but makes no mention of the 346 code violations in the publicly available portion of the site. Furthermore, it is only after a Non-Disclosure Agreement is signed that a potential bidder at auction review the violation notices. This unusually rosy marketing presented by the Plaintiff by and through their broker further informs the City's motion to Intervene insofar as such obfuscation of the true conditions of the Properties may lead to the Properties landing in the hands of an unsuspecting potential purchaser who has neither the financial capacity nor technical ability to sustain the objectively multi-million dollar renovations these long-neglected buildings require. Not making public documents concerning these buildings readily and prominently available to potential bidders under the auspices of the Receiver appointed by this Court is a serious omission, if not worse, that has the potential to besmirch not only the Receiver, but the judicial process and oversight over the Properties to ensure they are transferred to a responsible end user.  Given all the above, it is clear that the City's Motion to Intervene is timely.

*2. The City of Cleveland has a Valid Interest in the Properties Subject to the Present Action that Will Be Impaired if Intervention is not Granted.*

As the foregoing has already outlined, the City's interest in code compliance is a valid Constitutional interest that will be impaired absent the City's Intervention in the present case. The Jurisdiction of the Federal Court coexists with a political subdivision of a State's ability to enforce laws and ordinances involving the conditions of residential structures where health and safety are concerned. See <u>Vill. of Euclid, Ohio v. Ambler Realty Co</u>., 272 U.S. 365, 387 (1926) and <u>Miller v. Bd. of Pub. Works of City of Los Angeles</u>, 234 P. 381, 383 (1925) *supra.* This co-

existence is called into question when a Receiver can given such powers as to prohibit any "body politic," from enforcing State law or local ordinance taking *any* action to establish or enforce *any* claim, right, or interest related to the Properties…or to interfere with the *exclusive* jurisdiction of this Court over the Properties" Doc. 31-14 (emph. added). If Leave of Court is required to assert the City's interest in preserving the health, safety, and welfare of its citizens, and absent such leave the City's residents may be left to the mercy of parties which do not share the City's and therefore the residents' interests, then the City must necessarily be allowed to Intervene and assert those interests before the Court.

*3. The City of Cleveland's Interests in the Properties are not Adequately Represented by an Existing Party.*

The record of these proceedings and the above analysis shows that the City's interests are not adequately represented by existing parties, necessitating this Court granting the City's Motion to Intervene. Federal Courts have consistently held that a party seeking to intervene in a matter must show that their interest in the matter is not adequately represented by one of the parties already in the suit. Trbovich v. UMW, 404 U.S. 528, 538 (1972). Although generally a movant need only show that his interest 'may be' inadequately protected, such burden becomes more difficult to overcome when a party to the suit shares "the same ultimate objective as a party to the suit." United States v. Michigan, 424 F.3d 438, 443-444 (6th Cir.2005) (*citing* Bradley v. Milliken, 828 F.2d 1186, 1192 (6th Cir. 1987)). In parsing similar cases, Federal Courts have distinguished the interests of a mortgagor in preserving property as a financial asset and compliance with applicable codes affecting health, welfare, and safety. United States v. Schreiber, 150 F.R.D. 106, 109 (1993). In *Schreiber*, the court considered whether tenants could

17

intervene in a case where HUD sued a property owner for failing to comply with HUD regulations. Id. At 107. When considering the interests of the intervening tenants and HUD, the court noted that both parties have the same interest in granting possession of the housing projects to HUD. Id. At 109. However, the court distinguished the two parties interests, finding that HUD had a financial interest as a mortgager which was different than the tenants interest in "obtaining immediate repairs that will make these properties safe and sanitary." Id.

      Here, Plaintiff, as a Federal entity, has responsibilities under its Charter to provide safe decent and affordable housing; the Receiver likewise has a mandate to maintain the Properties under its custody in compliance with applicable law; and the City has a duty to seek enforcement of all laws and regulations affecting the Properties' conditions. While these could be construed as moving towards the same "ultimate objective" it is clear that in the present case, the Plaintiff is primarily concerned with its financial interest in the Properties as a mortgager and the City has an interest in code compliance which, as the foregoing shows relative to the conduct of the Receiver, is clearly not being adequately represented. In its three reports to the Court since becoming appointed, the Receiver has made it evident that maintaining the Properties in compliance with code is limited at best, and that it lacks the necessary finances to properly operate and preserve the Properties. As the foregoing has demonstrated, it cannot seriously be argued that the City's interests in the property are being adequately protected by the Plaintiff or the Receiver when 346 open code violations exist after almost a year and communication between the City and the above-mentioned parties having custody and control of the Properties is minimal at best and non-existent at worst.

IV. CONCLUSION

The present Action presents an admittedly tragic and complex set of facts before the Court, made more urgent due to the current and deteriorating conditions of the Properties, the effects those conditions are having on tenants, and the balance of interests between not only the existing parties but the public interests of the residents of Cleveland as represented by the City in ensuring that all residential structures are maintained in compliance with applicable law. In this matter and as the foregoing demonstrates, the City can only adequately assert those public interests by Intervening in this Action; and for these reasons the City's Motion should be Granted without delay.

                                              Respectfully Submitted,

                                              */s/ Zachariah S. Germaniuk*
                                              DAVID M. DOUGLASS (0015312)
                                              ZACHARIAH S. GERMANIUK (0090109)
                                              MICHAEL E. REARDON (0062389)
                                              SEAN F. BERNEY (0058608)
                                              DOUGLASS & ASSOCIATES CO., L.P.A.
                                              4725 Grayton Road, Cleveland, Ohio 44135
                                              (216) 362-7777 or 216-362-4140
                                              Fax No:  (216) 362-4160
                                              E-Mail: d.douglass@douglasslaw.com
                                              z.germaniuk@douglasslaw.com
                                              m.reardon@douglasslaw.com
                                              s.berney@dokglasslaw.com
                                              *Attorneys for Intervenor, City of Cleveland*