# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| FANNIE MAE, | ) | CASE NO. 1:24-CV-01606-JDG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| HATZ ONE, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## SPECIAL MASTER'S REPORT AND RECOMMENDATION
## RE: DKTS. 67, 71 AND 72

Before the Special Master, and pursuant to Federal Rule of Civil Procedure 53, are Plaintiff Fannie Mae's Motion for Order of Sale (Dkt. 67), the City of Cleveland ("City")'s Motion to Intervene (Dkt. 72), and the City's Third-Party Complaint for Injunctive Relief (Dkt. 71). Following review, and for the reasons stated herein, this Special Master recommends that the District Court GRANT Fannies Mae's Motion for Order of Sale and GRANT IN PART and DENY IN PART City's Motion to Intervene.

## **INTRODUCTION**

These motions present a narrow but consequential question: whether, after this Court has appointed a receiver to stabilize distressed multifamily properties and has already entered a foreclosure judgment, the City of Cleveland may intervene to enforce municipal housing and nuisance laws in a manner that conditions, delays, or effectively controls the sale of the properties. The answer is yes in part and no in part.

The City plainly has a legitimate governmental interest in protecting tenants and the public from unsafe housing conditions. The pleadings reflect serious and longstanding property conditions, and no party disputes that the properties require substantial work. But the City's request goes beyond ordinary code enforcement. In addition to intervention, the City seeks relief that would require immediate repairs or demolition and would enjoin any third party from taking title or operational control unless that party first submits a comprehensive nuisance-abatement plan for court approval. (Dkt. . 71 ¶¶ 8-12, Prayer for Relief ¶¶ a-d.) That request would do far more than preserve the City's enforcement rights. It would insert the City into the center of the Court's receivership and foreclosure process and would effectively give the City a gatekeeping role over the disposition of the collateral itself.

That is not permissible in the present posture of this case. The Court has already determined that Fannie Mae is entitled to foreclosure and sale if the amounts due are not timely paid. (Doc. 66; see also Doc. 67 at 1-2.) The cure period has expired. The receivership was imposed to stabilize the asset, not to operate as a permanent substitute for ownership. The requested sale is therefore not a new equitable remedy; it is the execution of an existing judgment. The City may intervene to protect its legitimate code-enforcement interests, but any intervention must be strictly limited so that it does not impair the receiver's authority, conflict with the Court's prior orders, or restrain the foreclosure sale.

### FACTUAL AND PROCEDURAL BACKGROUND

Fannie Mae commenced this action asserting claims arising from a defaulted multifamily loan, including foreclosure and appointment of a receiver. The properties consist of multiple apartment buildings comprising hundreds of units. In the receiver-order excerpt attached to the City's filing, the Court recounted evidence that the borrowers missed payments, that inspections revealed serious life-safety and maintenance issues, and that a later property condition assessment

2

recommended approximately $4.5 million in life-safety and critical repairs. (Dkt. 71-1 at PageID #1708-1710.) The same order further noted a dramatic decline in occupancy, from near-full occupancy to approximately twenty-five percent, supporting the conclusion that the collateral was in rapid deterioration and at risk of further diminution in value. (*Id.* at PageID #1710, 1713-1716.)

On February 28, 2025, the Court granted Fannie Mae's motion for appointment of a receiver. (Dkt. 30; Doc. 31.) As reflected in the reproduced order attached to the City's filing, the Court found that the borrowers' financial condition, the serious deferred maintenance, the decline in occupancy, and the risk of continued harm to the properties justified the extraordinary remedy of receivership. (Dkt. 71-1 at PageID #1712-1718.) The Court's analysis is significant for present purposes because it establishes two propositions that remain true now: first, the properties were already suffering from severe physical and financial distress before the City sought to intervene; and second, the Court already put in place a federal mechanism, through the receiver, to preserve the property and address urgent safety concerns.

The receivership did not terminate the foreclosure action. Instead, the case progressed. The docket report reflects that on December 8, 2025, the Court granted Fannie Mae's uncontested motion for partial summary judgment on its claim for judgment on the note and foreclosure of the mortgage. (Dkt. 66; docket report entry for Dkt. 66.) After entry of that order, Fannie Mae filed its Motion for Order of Sale on December 23, 2025. (Dkt. 67.) In that motion, Fannie Mae represented that the foreclosure order provided that, unless the amounts found due were fully paid within ten days, the equity of redemption would be foreclosed and the property would be sold free of the parties' interests, subject to redemption under Ohio Revised Code § 2329.33. (Dkt. 67 at 1-2.) Fannie Mae further represented that the sums due were not paid and that it is therefore entitled to

3

an order directing that the properties be sold in accordance with the Court's order and General Order 2006-16-6. (*Id.* at 2.)

Only after the foreclosure judgment and after the sale motion was filed did the City move to intervene. The City's Third-Party Complaint alleges that the properties are required to be maintained in compliance with applicable state and local law, that there are 346 uncorrected violations reflected in 47 separate notices, and that the conditions constitute an ongoing danger to public health, safety, and welfare. (Dkt. 71 ¶¶ 8-12.) The City seeks, among other relief: a declaration that the properties are a public nuisance; an order compelling immediate repair or, if impractical or impossible, demolition; and an injunction prohibiting any third party from taking title or operation over the properties unless that party first submits a comprehensive public nuisance abatement plan for court approval. (Dkt. 71, Prayer for Relief ¶¶ a-d.)

Fannie Mae filed a limited opposition. Fannie Mae does not oppose intervention as such if intervention is limited to municipal code enforcement consistent with applicable law. (Dkt. 77 at 2.) However, Fannie Mae asks that intervention be conditioned on dismissal of the City's parallel state action and release of the lis pendens because those filings were made after entry of the receiver order and, according to Fannie Mae, in violation of the stay and injunction contained in that order. (Id.) Fannie Mae further contends that the City's Third-Party Complaint does not state a cognizable claim for relief and improperly seeks to delay the foreclosure sale, impair the receiver's performance, or impair Fannie Mae's and FHFA's protected interests in the property. (Dkt. 77 at 2-3.).

4

**LEGAL STANDARDS**

### A.  Order of Foreclosure Sale

Under Ohio foreclosure practice, once the court has entered a decree of foreclosure and the debtor has failed to satisfy the amounts due within the time provided by the order, the case proceeds to sale. *See* Ohio Rev. Code §§ 2329.01-.61; Ohio Rev. Code § 2329.33. The sale mechanism is not a reopening of the foreclosure merits; it is the execution of the decree.

### B.  Intervention as of Right

Federal Rule of Civil Procedure 24(a)(2) provides that, on timely motion, the court must permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action" and is so situated that disposing of the action may impair or impede the movant's ability to protect that interest, unless existing parties adequately represent that interest. The Sixth Circuit typically evaluates intervention of right under four factors: timeliness, substantial legal interest, impairment of that interest, and inadequate representation. *Grutter v. Bollinger*, 188 F.3d 394, 397-98 (6th Cir. 1999). Even when intervention is warranted, courts have authority to define and limit the scope of participation so that the intervenor does not unduly expand the case or upset existing orders. See *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 381-82 (1987); *United States v. City of Detroit*, 712 F.3d 925, 931-32 (6th Cir. 2013).

### C. Federal Receivership

A federal receivership places the property at issue under the court's equitable control. The appointing court has broad authority to preserve and manage the assets subject to the receivership and to prevent interference with that control. *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). Because a receivership is an extraordinary remedy, it is used only where

5

4896-3004-0990, v. 1

necessary, but once imposed, it is the court's responsibility to protect the receivership estate from competing exercises of control that would frustrate the purposes of the appointment.

### D. Foreclosure Sale

Under Ohio foreclosure practice, once the court has entered a decree of foreclosure and the debtor has failed to satisfy the amounts due within the time provided by the order, the case proceeds to sale. *See* Ohio Rev. Code §§ 2329.01-.61; Ohio Rev. Code § 2329.33. The sale mechanism is not a reopening of the foreclosure merits; it is the execution of the decree.

### E. HERA

The Housing and Economic Recovery Act of 2008 ("HERA") provides that, except at the request of the FHFA as conservator or receiver, "no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver." 12 U.S.C. § 4617(f). Courts interpreting this provision have construed it broadly to preclude judicial relief that would interfere with FHFA's statutory powers over protected assets. *See*, e.g., *Town of Babylon v. FHFA*, 699 F.3d 221, 228-29 (2d Cir. 2012); *County of Sonoma v. FHFA*, 710 F.3d 987, 992-93 (9th Cir. 2013). Although municipal police powers are entitled to respect, they do not override federal statutory protections where the requested relief would materially interfere with the disposition or management of federally protected collateral.

## DISCUSSION

### A. Plaintiff's Motion for Order of Sale Should be Granted.

Under Ohio law, once the decree is entered and the cure period expires, sale follows. Ohio Rev. Code §§ 2329.01-.61; Ohio Rev. Code § 2329.33. The Court should therefore grant the Motion for Order of Sale and direct that the sale proceed in accordance with the foreclosure order and the governing sale procedures. In its December 8, 2025 Order, this Court ruled that unless the

6

sums due were paid within ten days the equity of redemption would be foreclosed and the property would be sold free of the parties' interests, subject to redemption under Ohio Revised Code § 2329.33. As Fannie Mae notes in its Motion, the property owners have failed to cure the delinquencies on the properties, let alone within the requisite ten-day period provided under the Order. (Dkt. 62 at 2). Accordingly, the properties are ripe for sale.

Nothing in the City's intervention papers supplies a persuasive reason to halt that process. The City identifies real safety concerns, but those concerns were not born with the sale motion. They long predated it and were among the reasons the Court appointed the receiver in the first place. (Dkt. 72-1 at PageID #1708-1718.) Nor does the City propose an alternative that is more likely to protect tenants or preserve value. The City's own requested relief effectively assumes that substantial capital investment will be needed either to repair or demolish portions of the properties. (Dkt. 71, Prayer for Relief ¶ c.) Yet the record shows why that investment is unlikely to come from the current ownership structure and why the Court already needed a receiver to step in. (Dkt. 71-1 at PageID #1713-1718.)

The sale is therefore not a threat to public safety. It is the most plausible route to long-term remediation. Fannie Mae emphasizes this point in its response: the receivership was never intended to last forever or fully rehabilitate the property; everyone agrees the property should be sold and a new owner entrusted with continuing the work necessary to ensure resident safety. (Dkt. 77 at 1.) This Special Master finds Fannie Mae's position persuasive. A receiver can stabilize and preserve. A receiver cannot serve indefinitely as a substitute for capitalized ownership. The market consequences of the City's code violations will travel with the asset, affecting valuation and bidding. That is how the system ordinarily accounts for such conditions. But those conditions do

not justify stopping the sale; they simply affect the sale price and acknowledge the future owner's obligations upon the recording of the foreclosure deed.

**B. The City Is Entitled To Limited Intervention, But Not To Intervention On Terms That Reframe The Case.**

The City argues that it satisfies the requirements of Rule 24(a)(2) to intervene in this lawsuit as a matter of right. The Special Master agrees, in part. The City has a substantial legal interest in enforcing local housing, safety, and nuisance laws against residential property located within its jurisdiction. The Third-Party Complaint alleges hundreds of unresolved code violations and an ongoing danger to public health and safety. (Dkt. 71 ¶¶ 9-12.) That is enough to establish a genuine governmental stake in the condition of the property. Existing parties do not represent that interest completely. Fannie Mae's interest is as mortgagee and judgment creditor; the receiver's function is to preserve the asset under the Court's direction; and the defendants have not demonstrated that they are positioned to vindicate the City's municipal interests. But that conclusion does not entitle the City to redefine the case. Intervention does not permit a late-arriving party to step into a federal foreclosure action and convert it into a municipal nuisance-abatement proceeding centered on whether and when title may transfer. The City came into this case after the Court had already imposed a receiver and after the Court had already entered foreclosure judgment. (Dkt. 30, 31, 66, 67.) In general, an intervenor takes the case as it stands and is not entitled to relitigate issues or orders that occurred prior to its intervention. *See*, e.g., *Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498, 64 S.Ct. 731, 88 L.Ed. 883 (1944) ("an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding."); *Deauville Assocs., Inc. v. Murrell*, 180 F.2d 275, 277 (5th Cir.1950); *United States v. Tennessee*, 260 F.3d 587, 594 (6th

Cir.2001). Thus, the City may intervene to protect its legitimate code-enforcement interests, but only within the procedural posture and equitable framework already established by the Court.

In its Opposition to the City's Motion, Fannie Mae states and agrees that the City's intervention in this lawsuit may be permissible if limited to the City's enforcement of applicable housing codes consistent with applicable law and if conditioned on dismissal of the City's parallel state action and release of the lis pendens. (Dkt. 77 at 2).. The Special Master agrees.

That condition is appropriate for at least two reasons. First, it prevents duplication, conflicting directives, and forum-shopping over the same property. Second, permitting the state action and lis pendens to remain in place while also allowing intervention here would invite confusion over which court controls the property and on what terms. The City does not dispute this condition. That agreement eliminates any practical obstacle to conditioning intervention on those steps.

Accordingly, the Special Master recommends that this District Court should grant intervention, but only for the limited purpose of allowing the City to be heard on issues of code enforcement and public safety in a manner consistent with the Court's prior orders, and only after dismissal of the parallel state action and release of the lis pendens.

### C. City's Third-Party Complaint, As Pleaded, Is Legally Deficient And Substantively Overbroad.

Fannie Mae argues that the City's Third-Party Complaint fails to state a cognizable claim because it seeks injunctive relief without pleading an independent cause of action. (Dkt. 77 at 2-3.) That objection is substantial. The Complaint invokes Rule 65 and asks for equitable relief, but it does not clearly identify a separate statutory or common-law cause of action beyond generalized nuisance-abatement and code-enforcement principles. (Dkt. 71 ¶¶ 1-12.) As a matter of pleading, injunctive relief is ordinarily a remedy, not a free-standing claim. *See Detroit Fire Fighters Ass'n*

*v. City of Detroit*, 482 Mich. 18, 29 n.10 (2008) (collecting principle); *see also Tumbleson v. Wells Fargo Bank, N.A.*, No. 1:13-cv-246, 2013 WL 12125708, at *3 (S.D. Ohio Oct. 9, 2013) (recognizing that injunctive relief is a remedy rather than an independent cause of action). That does not mean a complaint seeking injunctive relief is always defective; rather, it means the plaintiff must anchor the requested injunction to a viable legal claim.

The City's Complaint comes close to doing so, but not enough. It alleges that the properties are in violation of applicable law, that those violations amount to a public nuisance, and that the City is authorized to seek injunctive relief to abate such nuisances. (Dkt. 71 ¶¶ 9-12.) That may be sufficient to identify a public-nuisance or code-enforcement theory in broad outline. But the pleading as filed is less a traditional claim for relief than a request that the Court take over the entire future management and disposition of the asset. The impropriety of this request is further highlighted in City's Prayer for Relief paragraph (d), which would bar any third party from taking title or operation unless that third party first submits a comprehensive nuisance-abatement plan for court approval. (Dkt. 71, Prayer for Relief ¶ d.) That is not merely an order to comply with code requirements. It is a request to condition the transfer of property on judicial pre-approval of the future owner's remediation plan. That request exposes the central overbreadth of the Complaint. Even if the City has a cognizable claim for municipal nuisance abatement in some form, the relief requested is substantially broader than what is necessary to preserve the City's legitimate interests in this case. As previously stated herein, the City can protect its interest in enforcing code violations without interfering with the sale of the properties or attempting to circumvent the receiver order.

In light of this deficiency, the Special Master recommends that this District Court dismiss the City's Third-Party Complaint without prejudice and permit the City to correct its pleading deficiencies and refile.

**D. City's Third-Party Complaint Seeks to Improperly Interfere with the Receivership Order.**

The Special Master has determined that the City's request for injunctive relief is also improper because it conflicts with prior orders of this Court, specifically the receivership order (Dkts. 30, 31). This Court previously held that the underlying properties were in serious distress: missed payments, life-safety hazards, broken systems, unsanitary conditions, widespread deferred maintenance, and a dramatic occupancy collapse. For those reasons, among others, the Court concluded that a receiver was necessary because ordinary legal remedies were inadequate and because the properties faced continued harm and diminished value. (Dkt. 31). As such, by appointing the request receiver, this Court placed the oversight and management of the properties under the receivers control. Despite this, the City's Third-Party Complaint ask this Court to do three things, each of which alone are improper: First, it would impose a second layer of operational control over the properties while the receiver remains in place. The City seeks immediate repair or demolition orders, hearings on compliance with the receiver order, and broader judicial oversight tied to municipal standards. (Dkt. 71, Prayer for Relief ¶¶ b-c.) That would not merely complement the receiver's work; it would create parallel channels of control.

Second, the City seeks to restrict transfer of title and operation. Prayer for Relief paragraph (d) is explicit on that point. (Id. ¶ d.) That request directly collides with the purpose of the sale motion, which is to move the case from stabilized receivership to final disposition. (Dkt. 67 at 1-2.) If granted, the City's proposed injunction would allow municipal code concerns to function as

11

a veto over the foreclosure sale and any subsequent transfer. That is incompatible with the Court's prior determination that, absent cure, the property shall be sold. (Dkt. 67 at 1-2; Dkt. 66).

Third, the City's requested relief would displace the balance the Court already struck when it appointed the receiver. The receiver exists because the Court concluded that someone answerable to the Court had to stabilize and preserve the asset while litigation proceeded. (Dkt. 30 and 71-1 at PageID #1712-1718.) The City's proposal would effectively replace that structure with a new one in which municipal nuisance-abatement demands dictate not only interim remediation but the terms on which the property may leave receivership. That is not a supplemental remedy; it is a competing management regime. Federal receivership law does not permit that result. The Court must be able to protect the receivership estate from outside interference. *Liberte Capital*, 462 F.3d at 551. If the City wishes to bring legitimate concerns to the Court's attention, intervention allows it to do so. But intervention does not authorize the City to obtain an injunction that materially alters the receiver's authority or the Court's control over the property.

**E.  The City's Request for Injunctive Relief Impairs Federal Interests**.

Fannie Mae objects to the City's demand for injunctive relief on the basis that its request would impair federally protected interests under HERA. (Dkt. 77 at 3.) After careful consideration, the Special Master agrees.

Section 4617(f) broadly bars courts from taking action that would "restrain or affect" FHFA's exercise of its powers as conservator or receiver. 12 U.S.C. § 4617(f). Courts interpreting the statute have held that the bar applies not only to direct prohibitions against agency action but also to judicial orders that would materially interfere with the agency's ability to manage or dispose of assets. See *Town of Babylon*, 699 F.3d at 228-29; *County of Sonoma*, 710 F.3d at 992-93. Here, the City's requested injunction would delay the foreclosure sale, impair the receiver's duties, and

impair Fannie Mae's and FHFA's interests in the property. (Dkt. 72). If no third party may take title unless it first submits a comprehensive abatement plan for court approval, then the judicial sale cannot proceed in the ordinary course. (Dkt. 71, Prayer for Relief ¶ d.) The result would be a delayed sale, and bidders would face uncertainty about whether they could obtain title. Moreover, the ultimate disposition of the collateral would become contingent on a separate approval process not contemplated by the foreclosure decree. That is exactly the sort of judicial action that "restrain[s] or affect[s]" the management and disposition of protected assets. 12 U.S.C. § 4617(f).

The City's municipal police powers are important, particularly where tenant safety is involved. But HERA's anti-injunction provision does not evaporate simply because the requested interference is framed as local code enforcement. Where the practical effect of the requested relief is to delay sale, condition transfer, or impair the receiver's management of federally protected collateral, § 4617(f) presents a substantial obstacle.

For these reasons, and all reasons contained herein, the Special Master recommends that this Court dismiss the City's Third-Party claim for injunctive relief, as plead, without prejudice.

**F. The Sale of the Property Does Not Inhibit or Dilute the City's Municipal Police Powers.**

Existing code violations do not evaporate upon sale, nor does the City lose its enforcement authority merely because a foreclosure sale occurs. As a general matter, code obligations relating to the condition of real property are in rem obligations associated with the land and improvements. A purchaser at foreclosure takes the property subject to the actual condition of the premises and subject to whatever governmental compliance obligations attach to ownership and operation. The City may continue to enforce applicable codes against the new owner after sale. It may issue citations, seek compliance, and pursue such remedies as state and local law allow. For this reason, the City's demand for injunctive relief is moot.  In fact, The City's interest in safety and code

13

compliance is fully compatible with a sale that transfers the properties to a new owner. Indeed, post-sale enforcement is likely to be more meaningful than continued litigation against a distressed ownership structure already subject to receivership and foreclosure. To the extent municipal liens may arise from violations, their priority and survival will depend on state law and timing. But again, that reality affects the economics of sale; it does not render sale improper.

In other words, the City's legitimate interests can be preserved without giving the City the power to block disposition of the asset. That is the correct equilibrium here: allow code enforcement to continue, but do not let code enforcement become a mechanism for arresting execution of a federal foreclosure judgment.

Thus, for these reasons, the Special Master recommends that the Court DISMISS City's Third-Party Complaint, without prejudice.

## CONCLUSION

For the reasons stated above, this Special Master recommends that Fannie Mae's Motion for Order of Sale (Dkt. 67) be GRANTED and Third-Party City of Cleveland's Motion to Intervene to file Third-Party Complaint for Injunctive Relief be GRANTED IN PART and DENIED IN PART as follows:

1. **Motion for Order of Sale (Dkt. 67):** GRANTED.

2. **Motion to Intervene (Dkt. 72):** GRANTED IN PART to permit the City of Cleveland to intervene for the limited purpose of protecting and presenting its interests regarding municipal code enforcement and public safety, but only insofar as those interests are pursued in a manner consistent with this Court's prior orders, the receiver's authority, and federal law.

3. **Condition of Intervention:** Require, as a condition of intervention, that the City promptly dismiss the parallel state-court action and release the lis pendens.

4. **Third-Party Complaint (Dkt. 71):** DISMISS WITHOUT PREJUDICE. Any surviving claim should be narrowly confined to code-enforcement interests that do not interfere with receivership administration or sale.

14

4896-3004-0990, v. 1

Respectfully submitted,

/s/ Kevin M. Hinkel
Kevin M. Hinkel (0031821)
khinkel@frantzward.com
FRANTZ WARD LLP
200 Public Square, Suite 3000
Cleveland, Ohio 44114
Ph: 216-515-1071

*Special Master*

### OBJECTIONS

Pursuant to Rule 53(f)(2), any party may file an objection to the Special Master's report and recommendation within 10 calendar days of the date it is electronically filed. Any objection to a procedural order must be made within 3 calendar days. Failure to meet these deadlines results in permanent waiver of any objection to the Special Master's orders, findings, reports, or recommendations. (Dkt. 83).

### CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ Kevin M. Hinkel
Kevin M. Hinkel (0031821)

*Special Master*

15

4896-3004-0990, v. 1